THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY REDMILES, Defendant-Appellant.

Fourth District   No. 4—89—0254

Opinion filed November 30, 1989.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's
Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle,
Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant was charged with the unlawful possession of a hypo-
dermic syringe or needle in violation of section 1 of "An Act to regu-
late the possession, delivery, sale or exchange of hypodermic syringes
***." (Ill. Rev. Stat. 1987, ch. 38, par. 22—50.) Prior to trial, defend-

ant filed a motion to suppress evidence. The court denied the motion and found defendant guilty of the offense. Defendant appeals the trial court's denial of his motion to suppress evidence.

At the suppression hearing, several officers testified. Officer James P. Hanko-Summers, a Champaign County police officer testified that on the morning of November 3, 1988, he was a member of the SWAT team that executed a narcotics search warrant at 51 East Bradley Street in Champaign. The residence was owned by Larry Hoffman. Nine to twelve police officers participated in the search.

Upon arriving at the house, one of the officers noticed someone, who later turned out to be defendant, standing in the backyard. Defendant ran into the house through the open rear door. The officers followed with guns drawn, also entering the house through the rear door. Once inside the house, Officer Hanko-Summers saw defendant standing in the kitchen, handcuffed him and asked him his name. Hanko-Summers along with Officer Murphy then conducted a pat-down search of defendant for weapons to ensure the officers' safety. This, according to Officer Hanko-Summers, was standard procedure. Officer Hanko-Summers asked defendant if he had anything the officers might injure themselves on, such as needles or razor blades. Defendant responded by motioning his head towards his belt and stating "There's a needle right here." Officer Hanko-Summers found a hypodermic syringe underneath defendant's belt buckle. The officer later found a spoon, some cotton, and a film canister on defendant.

The next officer to testify was police sergeant Scott Colclasure. Sergeant Colclasure testified that he had been on 20 to 25 narcotic search warrants over the last few years and that on most of the searches, he had encountered armed individuals or weapons present on the premises. The sergeant further stated that the officers found a small quantity of drugs at the house.

Officer Jeffrey Jolley testified next. Jolley testified that upon arriving at the residence and coming through an alley, he noticed defendant in the backyard of the premises, walking away from the door. When defendant noticed the police, he turned around and ran back into the house.

The final witness to testify was defendant Larry Redmiles. Redmiles testified that he was not in the backyard, but instead fixing a broken lock on the rear door of the premises when he saw the police come around the back. Defendant then closed the door, went in the house and told Larry Hoffman, the owner of the house, that the police were there. After the police came in, "they immediately asked me [Redmiles] my name, handcuffed me and then started reachin' in my

pockets." The officers found a spoon, a film canister, and some cotton and then asked defendant if he had a syringe. Redmiles said he did not have a syringe but the officers threatened to strip search him and find one if he had it on him. It was only after this threat that defendant indicated where the syringe was.

Defendant Redmiles further testified that he used drugs and bought them on Bradley Street. However, defendant claims he did not know that Larry Hoffman dealt drugs.

The trial court specifically rejected claims by the State that the search was valid under section 107—14 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 107—14 (temporary questioning without arrest)). The court next discussed section 108—9 of the Code. (Ill. Rev. Stat. 1987, ch. 38, par. 108—9.) Section 108—9 states:

> "In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:
>> (a) To protect himself from attack, or
>> (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

The court found no evidence that the search was valid under section 108—9(b) of the Code because defendant could not have concealed or disposed of anything since the police were right behind him as he entered the house. However, section 108—9(a) did validate the search as the officers conducted the search for their own safety.

The court further found that there was no mention of defendant in the search warrant; the police did not know defendant would be on the premises; there was no command in the warrant to search defendant; the police officers handcuffed defendant and conducted a pat-down search of him to protect themselves from attack; during this search, the officers asked defendant if he had any dangerous articles on him; and defendant indicated he did in fact have a syringe.

Defendant waived his right to a jury trial, and a stipulation was made that all evidence presented at the hearing except for defendant's testimony was to be used at the bench trial. The court found defendant guilty and sentenced him to up to 90 days' incarceration or until a bed became available in a residential treatment center for substance abuse and 12 months' probation.

Defendant argues that the police lacked the requisite articulable suspicion or probable cause to believe that he was armed and dangerous. No probable cause existed because defendant was not named in

the warrant, the officers did not expect to find defendant on the premises and defendant did nothing suspicious to create probable cause. Defendant further argues that the officers held no reasonable belief that he was armed and dangerous to permit a *Terry* frisk. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

The United States Supreme Court in *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, held that independent probable cause is required to search a person on a premises being searched if that person is not named in the warrant. In *Ybarra*, police obtained a warrant authorizing them to conduct a search of a bar and its bartender for controlled substances. Seven or eight police officers entered the tavern to search the premises. One of the officers conducted a pat down of each of the 9 to 13 customers in the bar. The officer frisking defendant felt what he believed to be a cigarette package with objects in it. The officer later retrieved the package from defendant's pocket and found small packets containing heroin. The trial court found the search to be valid under the authority of section 108—9(b) of the Code. The United States Supreme Court reversed, finding that no independent probable cause existed to search defendant. The warrant did not mention defendant as a possible violator; the police did not know defendant and had no reason to believe that he had committed, or was committing, an offense; there was no movement suggesting any criminal conduct; and defendant said nothing suspicious in nature.

The Illinois Supreme Court has recognized that section 108—9 cannot authorize the search of people merely because they are on premises while a search warrant is executed. (*People v. Gutierrez* (1985), 109 Ill. 2d 59, 485 N.E.2d 845.) Instead, there must be a sufficient connection with the premises searched or with persons described in the warrant. Sufficient connection has been described as including the status of the person searched, where he resided, the purpose of the person's presence and any furtive gestures or motions. Independent probable cause must also exist to search a person on the premises who is not named in the warrant. *Gutierrez*, 109 Ill. 2d 59, 485 N.E.2d 845.

In *Gutierrez*, the defendant answered the door when police arrived and attempted to bar their entry. Defendant was nervous and refused to sit still. There were also bulges in defendant's pockets. The search warrant authorized the search of the house for drugs, and it appeared that defendant lived there. These factors, along with the fact that the warrant issued soon after an undercover officer bought drugs on the premises, led the court to find that probable cause ex-

isted and that the search was reasonable under *Ybarra* standards.

However, in *People v. Gross* (1984), 124 Ill. App. 3d 1036, 465 N.E.2d 119, a trial court applying *Ybarra* found no probable cause to search defendant. In *Gross*, defendant was a social guest at a house during the execution of a narcotics search warrant. The police detained and frisked defendant, and then went through her purse. Inside the purse, which was lying on a table next to defendant, police found cocaine. In affirming the trial court, the appellate court stated that there was no evidence to show that defendant had acted suspiciously, furtively, threateningly or that the officers could point to any specific reason for believing defendant to be armed and dangerous.

■ In the present case, defendant claims that he did nothing suspicious to create the probable cause required for a search pursuant to section 108—9. We disagree. The record shows that as the 9 to 12 police officers approached the house, defendant was standing either in the yard, or on the porch. Upon seeing the officers, defendant turned around and ran into the house. As the officers entered the house, they found defendant standing in the kitchen. The trial court found that defendant's actions created the probable cause required for a search pursuant to section 108—9. A trial court's decision on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Fuentes* (1980), 91 Ill. App. 3d 71, 414 N.E.2d 876.) We cannot say that the trial court's decision was manifestly erroneous here.

This case differs from *Ybarra* and *Gross* in that defendant here acted suspiciously when the police arrived. In both *Ybarra* and *Gross*, nothing suspicious was done to create probable cause in the minds of the officers. But here, there was testimony that defendant saw the police and immediately ran back into the house. This created the sufficient connection to the premises and the probable cause required to search defendant.

Because we find that probable cause existed to search defendant, we need not answer defendant's second claim that no reasonable suspicion existed to conduct a *Terry* frisk. The trial court is affirmed.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.