THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE WOODS, Defendant-Appellant.

Second District   No. 2—91—1219

Opinion filed February 24, 1993.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert O. Ackley, of Waukegan, for appellant.

David R. Akemann, State's Attorney, of Geneva, and Craig D. Patton, of Springfield (William L. Browers, Lisa A. Hoffman, and John X. Breslin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

After a stipulated bench trial, defendant, Steve Woods, was convicted of unlawful possession of under 15 grams of a substance containing a controlled substance, cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)), was sentenced to 30 months' probation, and was ordered to pay a $100 fine and costs.

On appeal, defendant argues that the trial court should have granted his motion to suppress evidence that defendant alleges the police obtained illegally. We agree with defendant that the trial court erred in holding that there was probable cause to arrest defendant. We also hold that the detention and search of defendant were not in accord with *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. As the grant of the motion to suppress would leave the State without sufficient evidence to convict defendant, we reverse defendant's conviction outright.

On the evening of November 16, 1990, police stopped defendant's car at the intersection of Kimball and State Streets in Elgin on instructions from Detective Mark Brictson, who had just observed defendant enter, exit, and drive away from a house at 320 Park Street in Elgin. After ordering defendant out of the car, the officers searched his person, discovering a packet of cocaine inside the band of his cap. The police had no warrant to arrest or search defendant.

Defendant moved to suppress the cocaine and other evidence, arguing that the stop and search were unconstitutional. At the hearing on the motion, defendant testified that, at about 7:30 p.m. on November 16, 1990, he was driving a borrowed blue Mustang that was in perfect working condition. He had earlier been inside the house 320 Park Street. As he drove away, he was doing nothing unusual and committing no observable traffic offenses. At the intersection of Kimball and State, one police car pulled in front of him, blocking his path. Two more police cars pulled up behind him. A detective and three other officers emerged from the police cars. The officers in back of defendant approached him, ordered him out of the car, and told him to put his hands on the car. Defendant complied. The police did not request any identification and did not pat down defendant. Defendant had no hard objects on his person, and the police recovered none.

An officer defendant identified at the hearing as Detective Daniel Radmer searched defendant's pockets and found nothing. Radmer then forcibly removed defendant's baseball cap. Radmer reached inside the cap; tucked inside the band was a package containing cocaine. Defendant testified at the hearing that he never told the officers to check his pockets.

For the State, Detective Brictson, who was qualified as an expert in narcotics for the purpose of the hearing, stated that, on the evening of November 16, 1990, the Elgin police department was conducting a narcotics surveillance operation in the area of 320 Park Street. Detective Brictson related that the police had done similar surveillance on the evening of November 9, 1990. He stated that 320 Park Street was known as a "very active" drug house.

Brictson testified that 320 Park Street has four apartments, two downstairs and two upstairs. The front staircase leads only to the front upstairs apartment. At the time of the surveillance, Brictson knew that Aldine Bowman lived in the second-floor front apartment. He was familiar with Bowman from prior drug arrests and from Bowman's association with two "infamous" Elgin drug houses within the previous five years. On the evening of November 16, 1990, Brictson observed activity at 320 Park Street from directly across the street. He used an infrared night scope to watch people enter and exit the building.

At the hearing, Brictson described three arrests that occurred shortly before the police stopped defendant. At 5:38 p.m., Holly Stejskal was arrested and found with cocaine on her person. About two minutes before her arrest, she entered the building, went up the staircase that led to Bowman's apartment, and came out the front

door, whereupon she was arrested. At 6:21 p.m., Mary Ann Jackson was arrested and found in possession of cocaine about two minutes after she had entered the house, gone to the back downstairs unit, and left about two minutes after entering. At 6:51 p.m., police arrested a man who had gone up the front staircase and exited about two minutes later; the police also found cocaine on him. Detective Brictson personally observed each of these people enter the house. He also observed other people in the house that night. He did not arrest anyone himself.

At 7:24 p.m., Brictson observed defendant exit the passenger side of a vehicle just up the street from the house. A woman was driving the car. Defendant went into the house, went up the front staircase, and emerged from the building about two minutes later. Defendant entered the car; the woman who had driven him there became the passenger. Defendant drove off. After observing defendant's behavior, Brictson radioed the other officers, including Radmer, to follow defendant. He told the officers specifically to search defendant for drugs. This was consistent with his instructions to the officers that evening to conduct a search for drugs on anyone he told them to search, whether or not that person had any weapons.

Detective Brictson conceded that, from across the street, he could see only about halfway up the front staircase of 320 Park Street. Brictson did not observe defendant go into the upstairs apartment. He did not see defendant talk to anyone other than the woman in the car. Brictson did not observe defendant engage in any transaction.

Detective Daniel Radmer testified that, after receiving instructions from Brictson, he stopped defendant's car at the intersection of State and Kimball. Radmer stopped the car based on information that defendant had apparently engaged in a drug transaction a few minutes earlier.

The court held that the police had probable cause to stop defendant. The court denied defendant's motion to suppress.

Defendant moved to reconsider. In response, the State filed an affidavit by Officer Radmer stating that, at the time the police ordered defendant out of the car, defendant told them, "I don't have any drugs, you can check my pockets." The trial judge attached little significance to this allegation, but refused to change his earlier finding of probable cause. After the motion to reconsider was denied, defendant was found guilty at a stipulated bench trial at which he presented no evidence.

On appeal, defendant argues that his mere presence in the house on the evening of November 16, 1990, did not give the police probable

cause to believe he was doing anything illegal. Defendant relies in part on *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, and on our recent decisions in *People v. Harper* (1992), 237 Ill. App. 3d 202, and *People v. Spann* (1992), 237 Ill. App. 3d 705, to argue that his mere presence at an apparent drug house did not give the police probable cause to arrest him. Defendant argues further that, even if the circumstances permitted a *Terry* stop of his car, the search of his person for evidence of crime went beyond the permissible scope of a search pursuant to a *Terry* stop. We agree with both contentions.

We hold first that the trial court erred in finding that there was probable cause to arrest defendant. Ordinarily, a trial court's ruling on a motion to suppress will stand unless it is manifestly erroneous. (*In re D.G.* (1991), 144 Ill. 2d 404.) However, where neither the facts nor the credibility of the witnesses is disputed, the existence of probable cause is a legal issue that we may review *de novo*. (*D.G.*, 144 Ill. 2d at 408-09.) Here, it appears that the only disputed factual issue at the trial level was what, if anything, defendant said to the officers after they stopped his car. The trial court attached no significance to whatever defendant might have told the officers; furthermore, that factual issue is not relevant to whether the police had probable cause to stop defendant in the first place. We therefore address this issue *de novo*.

We conclude that the police did not have probable cause for the stop or resultant search of defendant. The key to our holding is that, by their own admission, the police never saw defendant commit any act that appeared to be illegal. Rather, their suspicion was based on induction. Defendant fell under suspicion because, in the two hours before he entered the house, three other people entered the same house and, upon exiting, were found to possess cocaine. Two of these people apparently visited a person known to have had previous dealings in cocaine. There is no evidence whether any of these three people possessed cocaine *before* they entered 320 Park Street. Also, other people entered the house that evening. However, because defendant acted similarly to these three visitors, the police concluded that all four had engaged in drug transactions on the premises.

At least under the facts of this case, this type of inductive reasoning falls short of established standards for probable cause. It has been held repeatedly that neither the mere presence at a place where drugs are to be found nor the mere association with people known to be involved with drugs is sufficient to establish probable cause for illegal drug activity. (*Sibron*, 392 U.S. at 64, 20 L. Ed. 2d at 935, 88 S. Ct.

at 1903; *Ybarra v. Illinois* (1979), 444 U.S. 85, 90-91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 341-42; *Spann*, 237 Ill. App. 3d at 709; *Harper*, 237 Ill. App. 3d at 206; *People v. Simmons* (1991), 210 Ill. App. 3d 692, 700.) Here, Detective Brictson admitted that he saw defendant do nothing illegal; the officer could not even say whether defendant actually entered the upstairs apartment. Although the police had some ground for a hunch that defendant was engaged in a drug purchase, they lacked the specific facts needed to establish probable cause. We conclude that the probable cause finding was legally erroneous.

The State argues that, even if the police lacked probable cause to arrest defendant, they had enough articulable facts to allow them to make a valid *Terry* stop of defendant. Assuming *arguendo* that the police had grounds to effectuate such a stop and that the detention here was a *Terry* stop rather than an arrest, the fruits of the search must still be suppressed. The search of the defendant went beyond the scope of a valid "frisk" incident to a *Terry* stop. The sole justification for this type of search is the protection of the officer and not the gathering of incriminating evidence. (*Terry*, 392 U.S. at 23-27, 20 L. Ed. 2d at 907-09, 88 S. Ct. at 1881-83; *Sibron*, 392 U.S. at 65, 20 L. Ed. 2d at 936, 88 S. Ct. at 1904; *Harper*, 237 Ill. App. 3d at 207.) Here the State's own testimony established that none of the officers feared for their safety; they neither suspected nor tried to determine that defendant possessed a dangerous weapon. As the officers who testified at the hearing admitted, the police stopped and searched defendant solely to search him for evidence of a drug-related offense.

We hold that the trial court's denial of defendant's motion to suppress was legally erroneous. As the State could not prevail on remand without the evidence we have ordered suppressed, we reverse defendant's conviction outright. See *Harper*, 237 Ill. App. 3d at 207.

The defendant's conviction and sentence are reversed.

Reversed.

UNVERZAGT and WOODWARD, JJ., concur.