THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT MERRIWEATHER, Defendant-Appellant.

Second District    No. 2—93—0050

Opinion filed May 12, 1994.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Robert Merriweather, was charged by indictment with the offense of unlawful possession of less than 15 grams of cocaine (Ill. Rev. Stat. 1991, ch. 56½, par. 1402(c) (now 720 ILCS

570/402(c) (West 1992))). Defendant was found guilty during a bench trial with a stipulation as to the evidence. The trial court sentenced defendant to a term of 18 months' probation. Defendant appeals, contending that the trial court erred in denying his motion to suppress evidence obtained from a search of defendant during the execution of a search warrant. We reverse.

Defendant was arrested on the evening of July 14, 1992, while several officers from the Waukegan police department were executing a search warrant for an apartment on the second floor of 842 Adams Street. Defendant was not named in the warrant. Defendant was charged by indictment with the offense of unlawful possession of less than 15 grams of cocaine. He later filed a motion to quash his arrest and suppress the evidence. The trial court heard evidence on defendant's motion on November 6, 1992.

Officer Michael Szuchnicki testified that he was one of several officers executing the search warrant for the second-floor apartment at 842 Adams Street. He believed the target for the warrant may have been a black female. When the officers arrived to execute the warrant, some went to the front of the building and some went up a rear stairwell. Szuchnicki said he was stationed at street level at the rear of the building. He explained that the rear of the building had an enclosed stairway with a door that could be accessed from the street level. This stairway led to a first-floor landing where there was another door to the first-floor apartment. The stairway then continued up to the second floor so that one could also access the second-floor apartment from the stairway. Szuchnicki said that the enclosed stairway cannot be viewed from the outside.

Szuchnicki testified that some of the officers had already gone up the rear stairway towards the second-floor apartment when Szuchnicki saw defendant exit the street-level door of the rear stairway. Defendant was not armed and made no threatening gestures, nor did he shout a warning to the tenants. Szuchnicki said he pointed his gun at defendant and ordered him to raise his hands and get up against the wall. Szuchnicki said he stopped defendant because defendant had exited the building while the warrant was being executed and Szuchnicki wanted to pat down defendant to determine whether he might be leaving with some contraband. Szuchnicki said he also wanted to ensure his own safety by frisking defendant for weapons.

Szuchnicki said that defendant willingly complied with his orders. Defendant then informed the officer that he was "holding." Szuchnicki asked defendant what he meant and defendant said he had rock cocaine in his pocket. Defendant then reached into his pocket

and produced two packets of cocaine, a small pipe, and a lighter. Szuchnicki testified that he told defendant he was under arrest and had defendant handcuffed and placed on the ground outside the building. Szuchnicki said defendant had informed the officer that he did not live in the building.

Defendant testified that he had been inside the first-floor apartment on the evening of July 14 with James Diggs and a woman named Mary whose last name defendant could not recall. Defendant said that Mary had made dinner and the three were seated at the kitchen table. Defendant testified that the door leading to the rear stairway was to his right. Defendant said he saw some people running in the backyard and went to the rear door to see what was happening. Defendant said that when he stepped onto the first-floor landing of the enclosed porch, a police officer put a gun to his face and someone called from upstairs telling the officer to take defendant outside.

Defendant said he was then ordered to lie on the ground with other people also detained at the scene. The officers frisked all of them and took defendant to another area. As one of the officers prepared to search defendant again, defendant said he volunteered that he had some cocaine in his pocket which he then surrendered to the officer.

James Diggs testified that he was in the first-floor apartment with defendant and a woman named Mary on the evening in question. As they sat down to the kitchen table to eat, Diggs saw defendant watching something in the backyard. Diggs said defendant moved to the back door of the apartment. When defendant took a step outside the door, a police officer put a gun to his head and another officer ordered that defendant be taken outside. Diggs said he quickly moved back into the kitchen. Diggs admitted that he was on probation for burglary and was also in custody at the time of the suppression hearing on a pending charge of unlawful possession of a stolen motor vehicle.

The trial court denied defendant's motion to quash and suppress evidence. The trial court noted that Szuchnicki testified that he did not pat down defendant until after defendant volunteered that he was "holding," whereas defendant said he was brought out and immediately laid on the ground and patted down with the other people. The trial court concluded that "[i]n looking at the statute and the case law, in either scenario, I think the officers were justified in doing what they did for the protection of themselves and that the defendant voluntarily gave over to the officers what was in his pocket. So therefore the motion is denied."

Defendant waived his right to a jury trial and proceeded to a

stipulated bench trial. Defendant stipulated to the testimony given during the hearing on his motion to suppress. He preserved his objections to the admission of the drugs retrieved from his pocket and to any statements defendant gave indicating that he was "holding" on the ground that such evidence was the fruit of the defendant's illegal detention. The trial court found defendant guilty as charged in the indictment.

At the hearing on defendant's motion for judgment *n.o.v.*, the trial judge noted that he denied the motion to suppress and found probable cause to detain and search defendant specifically because defendant testified that he actually came out into the hallway and did not just stick his head out of the apartment. This appeal followed.

Defendant argues on appeal that the police officers did not have independent probable cause or even a reasonable suspicion to justify his seizure where defendant was merely exiting the exterior door of the building at the same time the police were executing a search warrant of the second floor; therefore, defendant contends that the trial court erred in denying the motion to suppress the fruits of the seizure.

■ A trial court's decision to suppress evidence will not be overturned on review unless that decision is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Defendant contends that the relevant facts here are not in dispute; therefore, the existence of probable cause is a legal issue that this court may review *de novo*. (*People v. Woods* (1993), 241 Ill. App. 3d 285, 289.) The testimony here differs as to where and when Szuchnicki apprehended and patted down defendant. However, the trial court did not attach significance to this distinction, finding that the officer's actions were legal "in either scenario." We believe these factual differences are not determinative since the pertinent issue in this appeal is whether the officer had probable cause to detain defendant in the first place. Accordingly, we address this issue *de novo*. *Woods*, 241 Ill. App. 3d at 289.

■ The State contends that defendant's seizure was legal under either section 108—9 of the Code of Criminal Procedure of 1963 or as a *Terry* stop. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) We first address section 108—9 of the Code, which states:

"In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:

(a) To protect himself from attack, or

(b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." (Ill. Rev. Stat. 1991, ch. 38, par. 108—9 (now 725 ILCS 5/108—9 (West 1992)).)

This statute does not authorize the search of any person who happens to be on the premises at the time a search warrant is executed. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) Rather, the State must show an independent probable cause or show a sufficient connection between the premises and the person searched. (*People v. Gutierrez* (1985), 109 Ill. 2d 59, 62.) The factors to be considered by the trial court include the status of the person, where he resided, his conduct, and the purpose of his presence. *Gutierrez*, 109 Ill. 2d at 62.

As noted previously, defendant testified he stepped onto the first-floor landing in the enclosed stairway and was immediately apprehended by Szuchnicki. Defendant contends that Szuchnicki patted him down once before defendant voluntarily stated he was "holding." Diggs also testified that defendant stepped out into the hall and a police officer put a gun to his head and took defendant outside. However, Szuchnicki testified that defendant was apprehended as he exited the outside door on the ground floor of the building. Szuchnicki said he patted defendant down only after defendant had volunteered that he was "holding" and had handed the officer the drugs.

We believe that defendant's detention was illegal under either factual scenario. Section 108—9 of the Code specifically provides that an officer executing a warrant may "detain to search any person *in the place at the time*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 108—9 (now 725 ILCS 5/108—9 (West 1992)).) The search warrant here was limited to the second-floor apartment in the building. The facts indicate that several officers were ascending the rear stairway to the second floor when defendant was apprehended either outside the ground-floor entrance to the building or just outside of the first-floor apartment. "It is fundamental that in interpreting a statute words are to be given the plain meaning whenever possible." (*People v. Nibbio* (1989), 180 Ill. App. 3d 513, 516.) Clearly, defendant was not "in the place at the time" since no evidence places him in the second-floor apartment at the time the search warrant was being executed.

We conclude that section 108—9 of the Code does not establish independent probable cause for the officer to legally detain defendant under either factual scenario elicited below. Instead, we believe this case is comparable to *People v. Simmons* (1991), 210 Ill. App. 3d 692, and *People v. Gross* (1984), 124 Ill. App. 3d 1036. In *Simmons*, this court held that the defendant's mere presence on the premises in a room which an informant had told police was used to ingest cocaine did not establish that there was an independent probable cause to search defendant. (*Simmons*, 210 Ill. App. 3d at 700.) This court

concluded that, where the defendant cooperated with the police and did not act in a suspicious manner or make any furtive gestures, "the belief that defendant possessed cocaine was a mere hunch or suspicion, which is insufficient to establish probable cause to search him." *Simmons*, 210 Ill. App. 3d at 701.

Similarly, in *Gross*, the court found that the police did not have probable cause to search the defendant, a social guest who was present during the execution of a search warrant, even though the premises were the site of suspected drug trafficking and the search revealed an "array of drugs" throughout the house. (*Gross*, 124 Ill. App. 3d at 1039.) The reviewing court in that case concluded that, since defendant did not act suspiciously nor did the officers executing the warrant have any specific reason to believe that the defendant was concealing contraband or a weapon, the defendant was searched simply because she was present while the warrant was being executed which is not permitted. *Gross*, 124 Ill. App. 3d at 1039.

We do not believe, as the State suggests here, that defendant's activity in stepping out of the first-floor apartment during the execution of the search warrant was suspicious, nor did it establish independent probable cause that he may have been engaged in criminal activity and attempting to flee. Defendant never exhibited any furtive motions, nor did he attempt to flee. (*Cf. Gutierrez*, 109 Ill. 2d 59 (probable cause existed where defendant, who answered the door of apartment when police were executing a search warrant, appeared nervous, attempted to close the door, and had bulges in his pants pockets); *People v. Redmiles* (1989), 191 Ill. App. 3d 198 (probable cause existed to search the defendant based on his flight when he saw the police officers approach the house).) In addition, defendant was not armed and did not act in a threatening manner. We believe Szuchnicki did not have independent probable cause to detain defendant for a search under either factual scenario described above. Accordingly, the trial court erred in denying defendant's motion to quash and suppress evidence.

We also conclude that defendant's detention was not justifiable as a *Terry* stop. In *Terry*, the Supreme Court recognized a limited exception to the probable cause requirement which allows a police officer, under appropriate circumstances and in an appropriate manner, to detain briefly a person for investigatory purposes and, if necessary for safety, to conduct a limited protective search of that person for concealed weapons. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) These principles are codified in our Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1991, ch. 38, par. 107—14 (now 725 ILCS 5/107—14 (West 1992)).

The underlying inquiry in a *Terry* stop is whether the officer's conduct was reasonable under the circumstances known at the time he initiated the stop and frisk. (*People v. Pantoja* (1989), 184 Ill. App. 3d 671, 674.) In order to be reasonable, the officer's inferences must be based on more substantial facts than would support a mere hunch. Therefore, to justify a temporary detention and frisk for weapons, the officer must point to specific articulable facts which, when combined with natural inferences, make the intrusion reasonable. *Pantoja*, 184 Ill. 3d at 674.

We believe defendant's exit from the first-floor apartment was a normal response to the commotion from the execution of the search warrant and such act did not give rise to a reasonable and articulable suspicion that defendant was engaged in criminal activity and attempting to flee. Accordingly, defendant's detention by Szuchnicki was also illegal under the *Terry* stop analysis.

We hold that the trial court's denial of defendant's motion to quash and suppress evidence was legally erroneous. As the State could not prevail on remand without the evidence we have ordered suppressed, we reverse defendant's conviction outright. See *Woods*, 241 Ill. App. 3d at 290.

The defendant's conviction and sentence are reversed.

Reversed.

QUETSCH and PECCARELLI, JJ., concur.