THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROSEMARY COATS, Defendant-Appellee.

Third District    No. 3—93—0717

Opinion filed March 16, 1995.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Tracy McGonigle, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Defendant Rosemary Coats was charged with unlawful possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 1992)). Defendant's motion to suppress evidence was granted by the trial court and this appeal followed. We affirm.

At the hearing on the motion to suppress, the facts of this case were submitted by stipulation. On February 18, 1993, officers of the Peoria police department executed a search warrant at a residence in Peoria. As Sergeant Richter and Officer Lambert began to walk up the steps leading to the front door, the defendant opened the door. Sergeant Richter told the defendant to "freeze" and announced that they were police officers. Other police officers forced open the rear door and entered the residence. Once inside, Officer Taylor searched the defendant and felt a hard object in her right coat pocket. Believing that the object could be a knife or other weapon, Taylor reached into the defendant's pocket and found what she recognized as a crack pipe. Officer Taylor then reached into defendant's left coat pocket and found a white rocky substance wrapped in a clear plastic cigarette wrapper.

The only occupants of the residence were the defendant and two male juveniles whom the defendant was watching. The defendant was not named or described in the search warrant, and at the time of the search, the police had no evidence indicating that the defendant was a resident of the premises.

In ruling on the defendant's motion, the trial court expressed concern for the safety of police officers executing search warrants at premises identified as the site of drug transactions. Nevertheless, the court granted the motion to suppress on the basis of this court's decision in *People v. Gross* (1984), 124 Ill. App. 3d 1036, 465 N.E.2d 119. The State argues on appeal that *Gross* should be overruled. Alternatively, the State contends that the search was proper because the defendant had a sufficient connection to the premises.

In *Gross* this court held that a person's mere presence on private premises which are the subject of a search warrant does not, without more, give rise to probable cause to search that person, nor does it create a reasonable belief or suspicion sufficient to justify a frisk for weapons pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The decision in *Gross* was premised on the Supreme Court's ruling in *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338. In *Ybarra* the police obtained a search warrant for a tavern based on information that heroin was located on the premises and on the person of the bartender. While conducting the search, police officers frisked the customers and heroin was found in Ybarra's pants pocket. In holding that the search violated the fourth amendment, the Court stated that the requirement of probable cause to search could not be avoided "by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may hap-

pen to be." (*Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342.) "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." (*Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342.) The Supreme Court also rejected the argument that the frisk of Ybarra was permissible under *Terry* because "the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra*, 444 U.S. at 94, 62 L. Ed. 2d at 247, 100 S. Ct. at 343.

In *Gross* the police executed a warrant to search the person and residence of Tom Sawyer. Kathleen Gross and four other nonresidents were at Sawyer's apartment during the search. Gross' purse, which had been lying on a table near her, was searched and the police discovered cocaine. In affirming the trial court's order granting Gross' motion to suppress, this court considered the State's argument that *Ybarra* should be limited to searches carried out in public places. The State argued then, as it does now, that the police face an increased danger in searching a private residence, particularly when the search is for drugs, because of the likelihood of the presence of weapons. In response, the *Gross* court stated that "*Ybarra* does not condition a person's expectation of privacy on the type of premises being searched and we will not alter that protection." (*Gross*, 124 Ill. App. 3d at 1039, 465 N.E.2d at 121.) The court further noted that "[t]he fact that drug trafficking is often a risky business does not justify the assumption in all cases that every person present where a drug search is being conducted is inherently dangerous or is harboring weapons and contraband." *Gross*, 124 Ill. App. 3d at 1040, 465 N.E.2d at 122.

While we recognize, as did the trial court, that there would be less risk to the police if they were allowed to frisk everyone they happen upon during a search, we believe that such a holding would be contrary to the fourth amendment and to the principles expressed in *Ybarra*. The position the State advocates would allow the police to search anyone present at the location to be searched, whether that person is an overnight houseguest, a friend visiting for the evening, a casual acquaintance who happened to drop by, a neighbor borrowing a tool, a delivery man or a babysitter. While the distinction between searches conducted on private versus public premises may warrant some relaxation of the probable cause/reasonable suspicion requirement (see, *e.g.*, *People v. Gutierrez* (1985), 109 Ill. 2d 59, 485 N.E.2d 845 (suggesting that search of a person who is on private premises for which a warrant has been issued may be proper where there is a

sufficient "connection" with the premises or with persons described in the search warrant)), the differences between searches at public versus private places are not nearly great enough to justify completely abandoning the constitutional requirement of probable cause/reasonable suspicion that is particularized to the person being searched or frisked. We therefore decline the State's invitation to overrule *Gross*, and we instead reaffirm our holding that mere presence at a private residence where an authorized search is taking place does not, without more, give rise to probable cause to search nor does it create a reasonable suspicion sufficient to justify a frisk for weapons. See *People v. Merriweather* (1994), 261 Ill. App. 3d 1050, 634 N.E.2d 361 (following *Gross*); *People v. Simmons* (1991), 210 Ill. App. 3d 692, 569 N.E.2d 591 (same).

The State also contends that the trial court erred in granting the defendant's motion to suppress because the defendant had a sufficient connection to the premises to allow a search. The State relies on section 108—9 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/108—9 (West 1992)), which provides:

> "Detention and Search of Persons on Premises. In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:
>
> (a) To protect himself from attack, or
>
> (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

This is the same statutory section that was at issue in *Ybarra*. Subsequent to *Ybarra*, our supreme court considered the meaning and scope of section 108—9 in *Gutierrez* (109 Ill. 2d at 62, 485 N.E.2d at 846-47), stating:

> "Decisions interpreting section 108—9 have recognized that the section cannot authorize searches of persons merely because they are on premises for which a warrant has been issued, without violating constitutionally protected rights. Consequently, persons searched under the authority of this section must have a sufficient 'connection' with the premises or with persons described in the search warrant. [Citations.] Factors considered on the question of 'connection' have included the status of the person, where he resided, his conduct, and the purpose of his presence. *It is clear, however, that the holding in Ybarra v. Illinois (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, requires that independent probable cause must be shown in order to conduct a search of a person on the premises but whose search is not authorized by warrant.*" (Emphasis added.)

Although the State contends that *Gutierrez* provides that a search is permissible under section 108—9 when the person searched has a

sufficient connection to the premises *or* where independent probable cause exists, the language emphasized above suggests to us that the *Gutierrez* court was interpreting *Ybarra* as requiring probable cause, rather than a mere connection to the premises. (See *People v. Redmiles* (1989), 191 Ill. App. 3d 198, 547 N.E.2d 724 (section 108—9 requires a sufficient connection to the premises *and* probable cause); but see *Merriweather*, 261 Ill. App. 3d 1050, 634 N.E.2d 361 (stating that section 108—9 requires a sufficient connection *or* probable cause); *In re C.K.* (1993), 250 Ill. App. 3d 834, 620 N.E.2d 569 (same); *Simmons*, 210 Ill. App. 3d 692, 569 N.E.2d 591 (same).) In any event, we need not resolve the issue of whether a search pursuant to section 108—9 requires independent probable cause or whether some "connection" with the premises or person described in the search warrant is sufficient, because neither probable cause nor a sufficient connection exists in this case.

Ordinarily, a ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Frazier* (1993), 248 Ill. App. 3d 6, 617 N.E.2d 826.) Where, however, the facts and the credibility of the witnesses are not in dispute, the issue is subject to *de novo* review. (*Frazier*, 248 Ill. App. 3d 6, 617 N.E.2d 826; *People v. Woods* (1993), 241 Ill. App. 3d 285, 608 N.E.2d 1292.) Inasmuch as the facts in this case are stipulated, we will apply the *de novo* standard of review.

■ The State concedes, and we agree, that the police had no probable cause to search the defendant. We further find, however, that any connection between the defendant and the premises was too attenuated to support a search. Considering the factors referred to in *Gutierrez*, we note that the defendant's "status" was apparently that of a babysitter. The defendant's residence, according to the address listed on the indictment, was different from the searched premises. The totality of defendant's conduct consisted of opening the front door of the residence. The purpose of defendant's presence, as far as can be gleaned from the stipulated facts, was to watch two boys. Given these facts, even assuming that a sufficient connection to the premises will support a search, we find that the defendant's connection fails to meet this standard.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

LYTTON and McCUSKEY, JJ., concur.