THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICIA A. ELLIOT, Defendant-Appellant.

Second District    No. 2—98—1496

Opinion filed June 14, 2000.

BOWMAN, P.J., dissenting.

G. Joseph Weller and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Bridget L. Field, of Park Ridge, for the People.

JUSTICE COLWELL delivered the opinion of the court:

Following a bench trial, defendant, Patricia A. Elliot, was convicted of possession of a controlled substance (720 ILCS 570/402(c) (West 1998)). She was sentenced to 12 months' conditional discharge. She appeals, arguing that the trial court improperly denied her motion to suppress the State's evidence, which was obtained in violation of the fourth amendment (U.S. Const., amends. IV, XIV). We reverse.

At the hearing on defendant's motion, the State called Daniel Greathouse, a Waukegan police officer. He testified that, on September 4, 1998, about 6:45 p.m., he and approximately 10 other officers executed a warrant to search an apartment. He knocked on the door, announced his office, and got no answer. The police rammed the door and entered. During a sweep of the apartment, Greathouse pushed open the door to a bathroom and saw defendant sitting on the toilet. She was the only person in the apartment.

After Greathouse determined that the area was secure, he spoke to defendant in the apartment's living room. Another officer, Tom Granger, stood by while the rest of the officers executed the warrant. Greathouse advised defendant of her *Miranda* rights, which she waived. Greathouse asked, "[D]o you have any drugs on you?" Defendant replied, "[T]hey are not mine." Greathouse asked her where they were, and she pointed to her left breast. Greathouse asked for them, and defendant pulled a cigarette pack from her bra. She gave the pack to Granger, who found cocaine inside. Defendant denied knowing what the pack contained; she said that she merely found it in the bathroom and picked it up. Defendant was arrested.

On cross-examination, Greathouse testified that he did not believe that defendant lived at the apartment. When the officers secured the

area, they restrained about eight people outside the apartment. They handcuffed some and asked others to lie on the ground. Although Greathouse did not recall that defendant was handcuffed before her arrest, she was not free to leave.

Greathouse acknowledged that defendant was not a target of the warrant. The following exchange then occurred:

"Q. What did you observe her doing that would make you believe she had been committing a crime other than being in the house?

A. She was in a crack house. That's—my experience, people in crack houses are connected to crack, drugs. Either they are users or sellers [or they] have knowledge of who's using or who's selling."

Granger substantially corroborated Greathouse's testimony, and the State rested. Defendant testified that she did not live at the apartment; her sister and brother-in-law resided there. She did not know that the police had entered the apartment until they opened the bathroom door. They allowed her to finish using the toilet but examined it before she flushed it. Nervous, she dropped her purse, which spilled objects onto the floor. She picked them up and put them back into her purse before she left the bathroom.

Defendant stated that the police took her purse, handcuffed her, and led her to the living room. They did not give her *Miranda* warnings. She was scared because she did not know what was happening. Through a window, she saw her sister and brother-in-law handcuffed on the ground outside. She wanted to leave but was not allowed to do so.

When Greathouse asked her if she had any drugs, she said that she had only cigarettes. An officer uncuffed her, allowed her to retrieve them from her bra, and cuffed her again. Ultimately, she was arrested.

On cross-examination, defendant testified that she told the police that she found the cigarette pack on the floor of the bathroom. She picked it up when she gathered the items that fell out of her purse.

The defense rested. Defendant argued that the police did not have sufficient grounds to seize her; her mere presence in the apartment did not justify the detention that led to the discovery of the cocaine. The trial court credited the officers' testimony that they gave her *Miranda* warnings and did not handcuff her before they questioned her. On that basis, the court denied defendant's motion to suppress and her motion for reconsideration. Defendant was tried, convicted, and sentenced. Her motion for a new trial was denied, and she timely appealed.

When a trial court's ruling on a motion to suppress turns upon

factual determinations and credibility assessments, we may reverse it only if it is manifestly erroneous. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). However, when the court's findings of fact are not against the manifest weight of the evidence, we may review *de novo* a defendant's legal challenge under those facts. *People v. Gonzalez*, 184 Ill. 2d 402, 412 (1998). Here, the trial court credited the officers' testimony, thus making a credibility determination that was not against the manifest weight of the evidence. Therefore, we will review *de novo* defendant's constitutional claim under the officers' version of the events. See *Gonzalez*, 184 Ill. 2d at 412.

■ The fourth amendment prohibits "unreasonable searches and seizures." U.S. Const., amend. IV. Defendant argues that the State's evidence was the fruit of an unreasonable seizure: a custodial interrogation without adequate justification. Thus, we must determine (1) whether the police subjected defendant to a custodial interrogation; and, if so, (2) whether they had a constitutionally sufficient basis for doing so.

■ An "interrogation" occurs when a police officer uses words or actions that he should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 302, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1690 (1980). Here, Greathouse asked defendant, "[D]o you have any drugs on you?" Obviously, this question was designed to elicit an incriminating response, as it did. Therefore, an interrogation occurred.

■ In determining whether an interrogation is custodial, we must examine all of the circumstances, including (1) the time and place of the confrontation; (2) the number of police officers present; (3) the presence or absence of family or friends; (4) any indicia of a formal arrest procedure, such as physical restraint, the show of weapons or force, booking, or fingerprinting; and (5) the manner by which the individual arrived at the place of the interrogation. *People v. Melock*, 149 Ill. 2d 423, 440 (1992). No single factor controls; after considering each one, we must determine whether a reasonable, innocent person would have believed that he was free to leave. *People v. Kilfoy*, 122 Ill. App. 3d 276, 287 (1984).

■ We have little difficulty concluding that defendant was in custody when she was interrogated. During the evening hours, approximately 10 police officers entered the apartment by force. They discovered defendant when they entered a bathroom while she was using the toilet. Defendant was secured alone in the apartment while those outside were placed in handcuffs or on the ground. Two officers led defendant to the living room and issued *Miranda* warnings as other officers searched the apartment. Under these circumstances, no

reasonable person would have believed that he was free to leave; indeed, Greathouse testified explicitly that defendant was not. Therefore, we determine that defendant was subjected to a custodial interrogation.

The trial court ruled that, because the police issued *Miranda* warnings to defendant, no constitutional violation occurred. However, *Miranda* warnings protect only a defendant's fifth amendment right against coerced self-incrimination. U.S. Const., amends. V, XIV; *Brown v. Illinois*, 422 U.S. 590, 600-01, 45 L. Ed. 2d 416, 425, 95 S. Ct. 2254, 2260 (1975). They do not purge automatically the taint of an unreasonable seizure in violation of the fourth amendment. *People v. Townes*, 91 Ill. 2d 32, 39 (1982). Therefore, although defendant may have produced the evidence voluntarily under the fifth amendment, "the Fourth Amendment issue remains." *Brown*, 422 U.S. at 601-02, 45 L. Ed. 2d at 426, 95 S. Ct. at 2261. We resolve the fourth amendment issue in defendant's favor.

Generally, a custodial interrogation without probable cause violates the fourth amendment. *People v. R.B.*, 232 Ill. App. 3d 583, 589 (1992). Probable cause exists if an officer knows facts that would lead a reasonable person to believe that the defendant committed a crime. *Buss*, 187 Ill. 2d at 204. Here, Greathouse testified explicitly that he was suspicious of defendant solely because "[s]he was in a crack house." That suspicion did not amount to probable cause.

> "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342 (1979).

The police had probable cause to search the apartment. All that they knew about defendant, however, was that she was in it. They did not see her with drugs. They did not see her near drugs. She cooperated with the police, did not act suspiciously, and made no furtive gestures. Indeed, the police had only a hunch that, because defendant was in the apartment, she was either a user or a seller of drugs. Just as this hunch would not have provided probable cause to search her (see *People v. Simmons*, 210 Ill. App. 3d 692, 700-01 (1991)), it did not provide probable cause to conduct a custodial interrogation.

Likewise, we cannot justify this detention as an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Under *Terry*, an officer may conduct such a stop without probable cause when he reasonably infers from specific facts that a person

is committing, has committed, or is about to commit a crime. *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). However, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676 (2000); see also *People v. Harper*, 237 Ill. App. 3d 202, 205-06 (1992). The individual's location is "among the relevant contextual considerations in a *Terry* analysis," but it is not enough, by itself, to support a valid stop. *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676.

Again, Greathouse could point to nothing suspicious about defendant beyond her mere presence in the apartment. As a result, *Terry* is inapplicable here.

We note that, because the police had a warrant to search the apartment, they had "the limited authority to detain the occupants of the premises" while they conducted the search. *Michigan v. Summers*, 452 U.S. 692, 705, 69 L. Ed. 2d 340, 351, 101 S. Ct. 2587, 2595 (1981). However, for two reasons, *Summers* does not validate the detention of defendant.

First, defendant was not an "occupant" of the apartment. We observe that the definition of the term as it was used in *Summers* has been subjected to considerable debate. See 2 W. LaFave, Search & Seizure § 4.9(e), at 650 n.118 (3d ed. 1996). However, in *Kilfoy*, this court adopted Professor LaFave's interpretation that only a resident of a dwelling is an "occupant" under *Summers*. *Kilfoy*, 122 Ill. App. 3d at 286-87. We concluded that, although a police officer has some latitude to determine whether any person found on the premises is a resident, he may not effect a *Summers* detention if the person is not. See *Kilfoy*, 122 Ill. App. 3d at 287-88.

Greathouse testified that he did not believe that defendant resided at the apartment. Thus, he determined, apparently without even asking defendant, that she was not an "occupant" under *Summers*. As a result, *Summers* does not support her detention.

Furthermore, *Summers* allows the police only to prevent a resident from leaving the premises during their search. It does not allow them to effect a seizure "likely to have coercive aspects likely to induce self-incrimination." *Summers*, 452 U.S. at 702 n.15, 69 L. Ed. 2d at 349 n.15, 101 S. Ct. at 2594 n.15. In other words, while *Summers* authorizes a detention, it does not permit a custodial interrogation. Therefore, defendant's status actually was irrelevant; this seizure required a fourth amendment basis independent of the officers' right to search the apartment. As we determined previously, no such basis existed. The custodial interrogation was unconstitutional.

We must now decide whether that violation warrants the suppression of the State's evidence. It is well established that the fruits of illegal police action may not be admitted into evidence unless the connection between the action and the discovery of the evidence is so attenuated that the taint is dissipated. *Wong Sun v. United States*, 371 U.S. 471, 491, 9 L. Ed. 2d 441, 457, 83 S. Ct. 407, 419 (1963). The factors to be considered in determining the level of attenuation are (1) the temporal proximity; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the misconduct; and (4) the provision of *Miranda* warnings. *Brown*, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62. Although the State urges us to remand the cause to allow the trial court to conduct this inquiry, we may conduct it ourselves when the record is sufficiently detailed. See *Brown*, 422 U.S. at 604, 45 L. Ed. 2d at 427, 95 S. Ct. at 2262. We elect to do so here.

The police obtained the evidence within seconds after they began their interrogation; Greathouse asked defendant if she had any drugs, she said that she did, and she gave them to Granger. Thus, almost no time elapsed and no intervening circumstances occurred. Furthermore, the clear purpose of the interrogation was "investigatory"; the police "embarked upon this expedition for evidence in the hope that something might turn up." *Brown*, 422 U.S. at 605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262. They did provide *Miranda* warnings, but, as we stated at the outset, *Miranda* warnings alone do not purge automatically the taint of a fourth amendment violation. *Townes*, 91 Ill. 2d at 39. Therefore, we hold that the taint was not purged here and that the State's evidence should have been suppressed.

Obviously, the State could not prevail on remand without the evidence that we have ordered suppressed. As a result, we reverse defendant's conviction outright. See *People v. Merriweather*, 261 Ill. App. 3d 1050, 1056 (1994).

For these reasons, the judgment of the circuit court of Lake County is reversed.

Reversed.

GALASSO, J., concurs.

PRESIDING JUSTICE BOWMAN, dissenting:
I respectfully dissent.

The critical issue, in my view, is whether the police had a reasonable suspicion to warrant the detention and questioning of defendant. Under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), an officer may conduct an investigatory stop without probable

cause when he reasonably infers from specific facts that a person is committing, has committed, or is about to commit a crime. *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). While I agree with the majority's position that "mere presence," without more, in a "crack house" is insufficient to justify a *Terry* stop (see *People v. Harper*, 237 Ill. App. 3d 202 (1992)), I believe that in this case the facts justified the *Terry* stop.

In *People v. Graves*, 281 Ill. App. 3d 386 (1996), we distinguished *Harper* in a manner applicable here. There, as in *Harper*, police officers saw the defendant enter a known drug house, remain for a short time, and leave. The officer observed nothing to indicate what the defendant did inside. Nevertheless, we upheld the stop of the defendant, distinguishing *Harper*, because of two additional facts. First, less than a week before the stop, the police conducted controlled purchases at the house. Second, less than three hours before the stop, the police arrested four other people who exited the building with drugs in their possession. *Graves*, 281 Ill. App. 3d at 388, 391. Thus, the mere presence of a person within a known drug house will not support a *Terry* stop of that person. However, knowledge of recent drug activity occurring within the house may constitute reasonable suspicion that a person is present therein for the purpose of engaging in such activity.

Although Officer Greathouse testified he suspected defendant only because "[s]he was in a crack house," Officer Granger's "complaint for search warrant" shows that the police conducted a controlled purchase at the apartment only a few days earlier. Therefore, as in *Graves*, the police in the case before us knew not only that the apartment generally was a "crack house" but also that drugs likely were being sold there on the day of the search. As a result, the police had reasonable suspicion that defendant, who was alone in the apartment, was involved with drug activity. They did not have probable cause to arrest or search her (see *People v. Simmons*, 210 Ill. App. 3d 692, 700-01 (1991)), but they had sufficient grounds to stop and question her, and there is no doubt that the stop produced grounds for a valid arrest.

It was the recency of the drug activity in the apartment that permitted the police to stop and question defendant. Additionally, the totality of the circumstances dictates whether there exists an articulable basis to believe a crime had been committed, or was about to be committed. *People v. Lockett*, 311 Ill. App. 3d 661, 667 (2000). Other facts which lend support for a *Terry* stop in this case were defendant's sole occupancy of the apartment, her failure to respond to the police announcement for entry, and her location in a closed door bathroom at the toilet. The fact that defendant was alone in the apartment would

lead a police officer to believe she had more than a visitor status. Also, it is common knowledge that, in the face of a police drug raid, occupants will attempt to flush illegal drugs down the toilet.

Finally, I note that the recency of drug activity and the activities of defendant were not the bases on which the trial court denied defendant's motion to suppress. The trial court ruled that, because the police issued *Miranda* warnings to defendant, no constitutional violation occurred. As the majority notes, *Miranda* warnings protect only a defendant's fifth amendment right against coerced incrimination. U.S. Const., amends. V, XIV; *Brown v. Illinois*, 422 U.S. 590, 600-01, 45 L. Ed. 2d 416, 425, 95 S. Ct. 2254, 2260 (1975). They do not purge automatically the taint of an unreasonable seizure in violation of the fourth amendment. *People v. Townes*, 91 Ill. 2d 32, 39 (1982).

Nevertheless, because we may affirm a ruling on a motion to suppress for any reason supported by the record (*People v. Buss*, 187 Ill. 2d 144, 205 (1999)), I would affirm the trial court's ruling on the ground that no fourth amendment violation occurred here.