THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH DILWORTH, Defendant-Appellant.

Third District    No. 3—93—0402

Opinion filed September 30, 1994.—Rehearing denied November 4, 1994.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

Following a stipulated bench trial, defendant Kenneth Dilworth was found guilty of the offense of unlawful possession of a controlled

substance (cocaine) on school property with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56 1/2, par. 1407(b)(2)). He was sentenced to a four-year term of imprisonment. The issue on appeal is whether the trial court erred in denying defendant's motion to suppress evidence. For reasons that follow, we reverse.

The evidence admitted at the suppression hearing established that in November of 1992, the 15-year-old defendant was a student at the Joliet Alternate School. Joliet police officer Francis Ruettiger was assigned full-time to the school and was responsible for criminal activity and disciplinary problems that arose there. On November 18, two classroom teachers requested that Ruettiger search another student, Deshawn Weeks, for possession of drugs. The teachers said they had heard that Weeks brought drugs into the school on the 18th and that he planned to bring more the next day. Based on this information, Ruettiger searched Weeks on the 19th. He found no contraband and escorted Weeks back to his locker.

Defendant's locker was next to Weeks'. The two young men met there and began talking and giggling in Ruettiger's presence. Ruettiger testified that he had the impression that they had "played him for a fool and had got something over on" him. Ruettiger noticed a flashlight in defendant's hand. He asked defendant what he was doing with the flashlight, and defendant said that he was going on a field trip to the museum. Ruettiger responded that there was no need for a flashlight at a museum and that such objects were not permitted at the school. Suspecting that it might contain drugs, Ruettiger first asked defendant to hand the flashlight over, and then he grabbed it from him. Ruettiger unscrewed the top and discovered five baggies containing a white, rock-like substance under the flashlight batteries. At that point, Ruettiger related, defendant looked like he had just seen a ghost, and he bolted out the school doors. Ruettiger gave chase, captured defendant, handcuffed him and escorted him to the police station. There, Ruettiger obtained defendant's statement, and defendant was charged as an adult for the instant offense.

Ruettiger further testified that a week or two prior to the arrest, he had interviewed defendant at the school at the request of a classroom teacher who suspected him of selling drugs at the school. Ruettiger had searched defendant on that occasion, but he had found nothing. Defendant informed Ruettiger that another student had the drugs. The other student was subsequently arrested for possession of marijuana in the classroom. Finally, Ruettiger testified that the students at the alternate school are prohibited from bringing in any type of weapon or blunt instrument that could be used as a weapon.

At the close of all evidence and arguments of counsel, the trial

court determined that Officer Ruettiger had reasonable cause to believe that the flashlight contained contraband. Accordingly, the court denied defendant's motions to suppress the fruits of Ruettiger's search and seizure. Defendant was subsequently tried as an adult, found guilty and sentenced, as aforesaid.

In this appeal, defendant contends that the trial court erred in ruling that defendant's constitutional rights were not violated by Ruettiger's search of his flashlight. Defendant argues that the officer's conduct was "unreasonable" under the standard established in *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733. We agree.

In *T.L.O.*, a teacher discovered 14-year-old T.L.O. smoking in the school lavatory. T.L.O. was interrogated by the assistant vice-principal. She denied that she had been smoking in the lavatory and claimed that she never smoked. The administrator then demanded to see T.L.O.'s purse and therein discovered cigarettes as well as a package of rolling papers associated with marijuana usage. Upon a more thorough search, the official discovered a small amount of marijuana, a pipe, several plastic bags, a wad of one-dollar bills, a list of what appeared to be the names of students who owed T.L.O. money, and two letters implicating T.L.O. in marijuana dealing. As a consequence, T.L.O. was delivered to the police, and she confessed to dealing in marijuana at the school.

On these facts, the trial court found that the search of T.L.O.'s purse was "reasonable" under fourth amendment strictures. A divided appellate court agreed. The supreme court of New Jersey, however, reversed on the ground that the contents of T.L.O.'s purse had no bearing on the accusation of smoking in the school lavatory.

The Supreme Court granted *certiorari* and addressed "what limits, if any, the Fourth Amendment places on the activities of school authorities." (469 U.S. at 332, 83 L. Ed. 2d at 728, 105 S. Ct. at 737.) The Court established that neither a warrant nor probable cause was constitutionally required.

> "Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the...action was justified at its inception,' *Terry v. Ohio*, 392 U.S., at 20, 20 L. Ed. 2d 889, 88 S. Ct. 1868; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' *ibid.*" 469 U.S. at 341, 83 L. Ed. 2d at 734, 105 S. Ct. at 742-43.

Applying the test to the facts, the Court found that the New

Jersey Supreme Court's decision striking down the search as unreasonable "reflects a somewhat crabbed notion of reasonableness." (469 U.S. at 343, 83 L. Ed. 2d at 736, 105 S. Ct. at 744.) The Court noted that the search was not unreasonable in its inception because "the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment....' *Hill v. California*, 401 U.S. 797, 804[, 28 L. Ed. 2d 484, 91 S. Ct. 1106] (1971)." (469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745.) The Court found that the school administrator's hypothesis that T.L.O. was carrying cigarettes in her purse was not unreasonable, given the teacher's eyewitness report and T.L.O.'s vehement denial that she smoked at all. Accordingly, the Court upheld the search of the purse and found that the broadened scope of the search leading to the discovery of evidence of marijuana dealing was justified. 469 U.S. at 347, 83 L. Ed. 2d at 738, 105 S. Ct. at 745-46.

■ In the instant case, by contrast, we cannot find that Officer Ruettiger's decision to search defendant's flashlight was based on a sufficient probability that defendant was dealing in drugs. Ruettiger testified unequivocally that he grabbed the flashlight and opened it up because he suspected that it might contain drugs. His suspicion was no more than a "hunch," because the facts and circumstances surrounding the situation, as related by the officer, provided no rational foundation for his decision to grab the flashlight. Defendant was associating with a student who had been accused, duly searched and released without Ruettiger's having discovered any evidence of criminal activity. Although defendant had been similarly accused and searched a week or two previously, no drugs had been found on him either. Thus, the teachers' unfounded accusations cannot be said to have given rise to a reasonable suspicion of defendant's possession of drugs on the date in question.

From his testimony, it would appear that Ruettiger's suspicion was fueled by the boys' talking and giggling immediately after his fruitless search of Weeks. We recognize that the officer's job must be frustrating at times. However, as acknowledged by the Court in *T.L.O.*, a student has a legitimate expectation of privacy in noncontraband personal belongings brought to school. (469 U.S. at 339, 83 L. Ed. 2d at 733, 105 S. Ct. at 741.) Even in the context of the alternate school setting here, we are not prepared to hold that the students' privacy interests are so diminished as to permit an intrusion based primarily on an officer's subjective perception of an affront to his dignity. Further, although the flashlight was arguably contraband as a "blunt instrument" prohibited by school policy, this was not in fact

why Ruettiger decided to confiscate it, nor was it a reasonable basis for taking the flashlight apart. Accordingly, we are constrained to conclude that Ruettiger's action was not justified at its inception. His search of the flashlight was, therefore, unreasonable under the fourth amendment, and the trial court erred in concluding otherwise.

Our determination that the search violated the student's constitutional guarantee of freedom from unreasonable searches leads us to conclude that the trial court erred in denying defendant's motions to suppress the fruits of the search. We note that the Court in *T.L.O.* left open the question of whether the exclusionary rule applies to the fruits of unlawful searches conducted by school authorities. However, we concur with the sound reasoning of the New Jersey Supreme Court in its ruling in *T.L.O.*:

> "Some contend, however, that the exclusionary rule should not apply since the fundamental purpose of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is to deter law enforcement officials from violating constitutional rights. They suggest that the school official be viewed as a private person, indeed as one *in loco parentis*, whose relationship to the student does not invoke the same protections as a search by a law enforcement official. But '[t]he Fourteenth Amendment [here incorporating the Fourth Amendment], as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted.' [Citations.] The 'basic purpose of [the Fourth Amendment] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' [Citations.]
>
> It is of little comfort to one charged in a law enforcement proceeding whether the public official who illegally obtained the evidence was a municipal inspector, [citation]; a firefighter [citation]; or a school administrator or law enforcement official. We believe that the issue is settled by the decisions of the Supreme Court and we accept the proposition that if an official search violates constitutional rights, the evidence is not admissible in criminal proceedings." (*State ex rel. T.L.O.* (1983), 94 N.J. 331, 340-42, 463 A.2d 934, 938-39, *rev'd on other grounds* (1985), 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733.)

The three dissenting justices in *T.L.O.* believed that the Court should have addressed the issue of the applicability of the exclusionary rule to school searches and stated that "[t]he New Jersey Supreme Court's holding on this question is plainly correct." *T.L.O.*, 469 U.S. at 372, 83 L. Ed. 2d at 754, 105 S. Ct. at 759 (Stevens, J., concurring in part & dissenting in part, joined by Marshall & Brennan, JJ.).

■ Here, the fruits of the search resulted in the criminal

conviction and sentencing of defendant as an adult. We can perceive of no justifiable basis for denying the exclusionary remedy and suppressing the tainted fruits of the search—the flashlight, its contents, and defendant's post-arrest statements to the police— merely because the officer who searched defendant was assigned full-time to the school. Because the State cannot prevail on remand without the evidence that we hereby order suppressed, defendant's conviction and sentence must be reversed outright. See *People v. Woods* (1993), 241 Ill. App. 3d 285, 608 N.E.2d 1292.

Reversed.

LYTTON and STOUDER, JJ., concur.