THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WARREN D. CHESTNUT, Defendant-Appellee.

Fourth District    No. 4—09—0338

Argued November 17, 2009.—Opinion filed January 12, 2010.—Rehearing denied February 3, 2010.

POPE, J., dissenting.

Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Mark A. Lehman (argued) and Baku N. Patel, both of Doyle, Lehman & Patel, P.C., of Danville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In January 2008, the State charged defendant, Warren D. Chestnut, with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2008)) and one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c) (West 2008)). Later that month, defendant filed a motion to quash arrest and suppress evidence, alleging defendant's search and seizure were illegal because the arresting officers lacked a reasonable suspicion of criminal activity. The trial court granted the motion, finding the officers had no reasonable suspicion defendant was engaged in criminal activity when he approached a residence during execution of a search warrant.

On appeal, the State argues the trial court erred by quashing defendant's arrest and suppressing evidence. We disagree and affirm.

## I. BACKGROUND

On January 15, 2008, police officers Troy Wasson and John Thompson assisted in executing a search warrant at 422 Jewel Street in Danville based on reports of drug activity occurring within the residence. At the March 2008 hearing on defendant's motion to quash arrest and suppress evidence, only Wasson and defendant testified.

Wasson testified police originally arrived at the residence to execute an active arrest warrant on one of the residents. After police "made contact with the residence," they obtained a search warrant. Police arrested individuals inside the residence "pursuant to the warrant," but Wasson did not specify any details of those arrests other than stating the target of the original arrest warrant was not present at the residence. (The search warrant is not part of the record on appeal.)

During the search of the residence, Wasson and Thompson worked as "security," "preventing anybody from entering the actual residence of the home where other agents were conducting a search[ ] and interviews of whoever was inside the residence." Wasson was not in uniform and had his badge hidden under his coat. Wasson believed

Thompson was uniformed but was not certain. From the outside, nothing indicated a police presence on the property.

Because Wasson and Thompson were assigned security detail, they remained outside on the residence's front porch. The porch was enclosed; had a door and windows; and was "small," measuring "[8] feet or so by maybe 10." At some point, the doorbell rang. Wasson did not recall whether this occurred before or after the search warrant had been signed. Wasson opened the door and stepped outside while defendant walked past him onto the porch. Wasson did not speak to defendant during this time. Initially, Wasson walked off the porch and partially down the sidewalk but later came up from behind defendant while defendant and Thompson remained on the porch, shaking hands and "chatting."

When Wasson and Thompson informed defendant they were police officers conducting a drug investigation, defendant began acting "a little nervous." After Wasson asked defendant why he was at the residence and whether he possessed any illegal drugs or narcotics, Wasson observed defendant "looking around" and starting "to unzip his coat like he was going to take his coat off." (The record before us does not reflect whether defendant answered Wasson regarding the reason for defendant visiting the residence.)

Defendant's behavior led Wasson to believe defendant "might be either getting ready to run[ ] or flee." At this point, Wasson believed defendant was not free to leave because (1) Wasson suspected him of criminal activity based on defendant "show[ing] up and walk[ing] right into the residence, as if he knew the resident[ ] or maybe the activity that was going on" and (2) Wasson and Thompson wanted "to identify [defendant] and what his reasons were for being at that residence." Wasson did not expressly inform defendant whether he was permitted to leave.

Defendant informed Wasson he possessed no drugs. Thompson repeated the same question, and defendant again responded "no." Thompson then asked if he could search defendant, and defendant consented.

During the hearing, defense counsel questioned Wasson as to whether the purpose of searching defendant involved weapons. The following exchange occurred:

"Q. When you said you thought maybe there was a weapon underneath [defendant's] jacket, did you do a pat-down?

A. I never said that I thought there was a weapon under there. I said there was something hidden or concealed under his jacket.

Q. Did you do a pat-down?

A. I did not, no."

Later, the prosecutor inquired as follows:

"Q. With regard to the issue of the weapon, you indicated that when [defendant] started to unzip [his jacket], *** a discussion [occurred during this hearing] about the possibility of a weapon. At that point, did you *** have some concern about the presence of a weapon or your safety?

A. Safety, yes; based on the fact that something could have been hidden under the jacket. I mean, there was nothing to indicate that there was[; it was] just a safety precaution, we wouldn't want a whole lot of people going in[to] their jackets while we are speaking to them."

Defense counsel then questioned Wasson as follows:

"Q. *** When Sergeant Thompson asked for consent to search [defendant], that was to locate drugs?

A. *** [H]e asked if [defendant] had any illegal drugs on him. That consent was to search for drugs, yes.

Q. Not a weapon?

A. I don't know. I cannot testify for Sergeant Thompson, what his intentions were when he asked [defendant] that."

Thompson did not testify. At the hearing, the prosecutor stated further testimony from Thompson was unnecessary because the State agreed to stipulate defendant never received *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)).

Defendant testified briefly at the hearing, stating Wasson "let [him] in" through the door leading to the front porch. When asked why he visited the residence at 422 Jewel on the day in question, defendant responded, "I was there to pick up—well, I was getting high at the time."

According to defendant's motion to quash arrest and suppress evidence, Thompson recovered United States currency and a bag of crack cocaine from inside defendant's right front pocket. A later search recovered "additional items of controlled substances." Thompson and Wasson arrested defendant, and the State later charged him with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2008)) and one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c) (West 2008)).

At the conclusion of the hearing, the trial court found the officers' detention of defendant "was unlawful in light of the purposes for the detention[,] that the subsequent questioning of [defendant] was in violation of the [f]ifth[-a]mendment privilege[,] and his search was violative of his [f]ourth[-a]mendment privilege." The court determined defendant did not present a reasonable suspicion of criminal activity by stepping into the enclosed porch because defendant only did so

after "Wasson created the appearance that he was letting defendant in." Because Wasson opened the door after defendant rang the doorbell and stepped outside, the court concluded defendant did not "show [any] connection with the residence" by entering the porch area. According to the court, "[defendant's] presence inside the residence was created by *** Wasson" and thus Wasson improperly used defendant's presence as a reason to suspect defendant of criminal activity.

The trial court also found the officers exceeded a valid *Terry* stop (see *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884 (1968)) because the officers exceeded the initial purpose of the stop—to ascertain defendant's name and the reason for his presence on the premises. The court noted the officers did not ask defendant his identity or his connection to the residence. Rather, they merely asked defendant if he had drugs on his person. Additionally, the court determined the officers did not search defendant out of fear he had a weapon, reasoning if the officers were concerned about defendant hiding a weapon, they would have conducted a pat-down search. The court concluded the officers were solely searching for drugs.

Finally, the trial court found "[the officers] made it clear to [defendant] he was not free to leave." The court supported its finding by noting the following circumstances surrounded defendant's detention: (1) one uniformed officer (Thompson) stood in front of defendant while a plain-clothes officer (Wasson) stood behind defendant on a small, enclosed porch; (2) the officers did not inquire as to any biographical information but instead immediately asked defendant if he was involved in illegal activity; and (3) the officers asked defendant multiple times if they could search him. The court also cited Wasson's testimony, in which he expressly stated defendant was not free to leave once he entered the porch.

Based on these findings, the trial court granted defendant's motion to quash arrest and suppress evidence.

This appeal followed.

## II. ANALYSIS

On appeal, the State contends the trial court erred by granting defendant's motion to quash arrest and suppress evidence. Specifically, the State argues (1) the court's factual findings were against the manifest weight of the evidence; (2) the arresting officers lawfully detained defendant for investigative purposes; and (3) *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) did not extend to the officers' questioning of defendant.

At a hearing on a motion to suppress evidence, the defendant must set forth a *prima facie* case showing he was doing nothing unusual to justify the intrusion of a warrantless search or seizure. *People v. Garvin*, 349 Ill. App. 3d 845, 851, 812 N.E.2d 773, 779 (2004); see also 725 ILCS 5/114—12(b) (West 2008). If the defendant satisfies this burden, then the State must present evidence justifying the intrusion. *Garvin*, 349 Ill. App. 3d at 851, 812 N.E.2d at 779.

## A. Factual Findings

The State first contends several of the trial court's factual findings are against the manifest weight of the evidence. Specifically, the State contests the following determinations made by the court: (1) defendant did not act suspiciously by entering the enclosed porch after Wasson opened the door, (2) the arresting officers did not attempt to question defendant as to his identity or his reasons for visiting the residence, and (3) Thompson asked defendant multiple times for his consent to search.

A reviewing court will reverse the trial court's factual findings only if they are against the manifest weight of the evidence. *People v. Beverly*, 364 Ill. App. 3d 361, 368, 845 N.E.2d 962, 969 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332, 882 N.E.2d 999, 1005 (2008).

## 1. *Defendant's Entry Into the Porch*

The trial court based its suppression in part on its finding defendant did not act suspiciously by entering the porch after ringing the doorbell. The State contends defendant entered the porch "without any express invitation" and thus police could infer "defendant was part of a pattern of drug traffic at the residence."

At the hearing on defendant's motion, Wasson testified that after defendant rang the doorbell, Wasson opened the front door and then walked outside. While the door was open, defendant stepped past Wasson and entered the enclosed porch. Wasson interpreted defendant's actions as "walk[ing] right into the residence, as if to know the resident, or maybe the [drug] activity that was going on."

However, Wasson's and defendant's descriptions of defendant's actions belie this conclusion. Defendant did not walk onto the property and into the residence without pause. Rather, both Wasson and defendant testified defendant rang the doorbell and waited for someone to answer before entering the porch area, not the house itself. While Wasson testified he opened the door to step outside, not to let defendant in, the gesture of opening a door, without words to

the contrary, implies an invitation to enter. Thus, the manifest weight of the evidence supported the trial court's determination defendant did not enter the porch uninvited.

### 2. *Officers' Questioning of Defendant*

The trial court also based its determination on its finding the arresting officers failed to "even try" to ascertain defendant's identity and purpose for visiting the residence. The court noted the officers asked defendant "out of the blue" if he possessed drugs rather than appropriate, nonincriminating questions to determine defendant's identity and connection to the residence.

During the hearing on defendant's motion, Wasson stated he "explained to [defendant] that [police] were conducting a drug investigation, *asked him why he was there*, and [asked] if he had any illegal drugs or narcotics on him." (Emphasis added.) Wasson did not testify whether defendant gave a reason for his visit to the residence. The court did not suggest it found Wasson's testimony less than credible. Instead, it noted Wasson "testified honestly to the best of [his] opinion." Thus, the court's finding the officers never expressly inquired about defendant's reason for visiting the residence was against the manifest weight of the evidence.

Regarding defendant's identity, Wasson did not testify he asked defendant who he was prior to the search. Upon first seeing defendant standing at the door, Wasson said nothing and stepped outside, leaving Thompson and defendant alone inside the porch. After exiting the porch, Wasson stood "only a few feet" away and observed Thompson shake defendant's hand while both began "chatting." Thompson did not testify at the hearing, but a reasonable inference exists when two individuals meet, shake hands, and talk, introductions may have taken place. As such, the manifest weight of the evidence does not support an inference neither officer asked defendant his identity prior to the search.

### 3. *Officers' Multiple Inquiries for Permission To Search*

Finally, the State argues the manifest weight of the evidence shows the officers asked defendant once for his permission to search. While Wasson's testimony reveals both officers asked defendant if he possessed illegal drugs, Wasson never testified he asked defendant for permission to conduct a search. He consistently testified only Thompson asked defendant, after which defendant acquiesced. Further, Wasson never stated Thompson asked for defendant's permission more than once. Therefore, the trial court's finding the officers asked defendant multiple times for permission to search his person was against the manifest weight of the evidence.

## B. Defendant's Seizure

The State argues the evidence above establishes police lawfully detained defendant based on a reasonable suspicion defendant was engaged in criminal activity. Defendant counters police lacked reasonable suspicion when they asked him "questions certainly calculated to elicit an incriminating response."

Two Supreme Court cases are relevant to the facts at bar. First, the trial court examined the facts in light of *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884, and held defendant's detention exceeded its scope because police did not have a reasonable suspicion defendant was engaged in criminal activity. Second, the State argued in its response to defendant's motion to suppress and now contends on appeal *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), authorizes defendant's seizure because defendant was an occupant of a residence subject to a search warrant. We examine each case in turn.

### 1. *Terry*

The trial court determined the arresting officers' detention of defendant exceeded the scope of *Terry* because the officers lacked reasonable suspicion to ask defendant incriminating questions (*i.e.*, whether defendant possessed illegal drugs). Rather, the court found *Terry* only authorized the officers to ask biographical information or why defendant was on the premises to determine whether defendant was engaged in criminal conduct.

Police may temporarily stop a person for questioning based upon a reasonable suspicion of possible criminal activity. *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884. The facts supporting reasonable suspicion need not constitute probable cause and can arise when no violation of the law is witnessed; however, a mere hunch is insufficient. *People v. Thomas*, 198 Ill. 2d 103, 110, 759 N.E.2d 899, 903 (2001). If a search goes beyond what is necessary to determine if a suspect is engaged in criminal activity, it is no longer valid and its fruits will be suppressed. See *People v. Sorenson*, 196 Ill. 2d 425, 432, 752 N.E.2d 1078, 1084 (2001).

Assessing the validity of a search and seizure requires a dual inquiry in which we determine (1) whether law-enforcement officers seized the defendant and (2) whether the facts available to the officers at the time justified the seizure. *Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969. In its brief, the State concedes police seized defendant for investigatory purposes once he entered the enclosed porch. Thus, the relevant inquiry is whether the seizure was lawful, *i.e.*, based on a reasonable suspicion defendant was engaged in criminal activity.

In making determinations regarding reasonable suspicion, we consider the totality of the circumstances. *People v. Payne*, 393 Ill. App. 3d 175, 180, 912 N.E.2d 301, 306 (2009). This is a legal question, which we review *de novo. People v. Kipfer*, 356 Ill. App. 3d 132, 136, 824 N.E.2d 1246, 1250 (2005).

When defendant entered the porch and was detained by police, the officers' reasons for suspecting defendant of criminal activity were as follows: defendant (1) was present at a residence being searched for illegal drugs; (2) entered the residence as if already familiar with his surroundings; (3) acted "a little nervous" by darting his eyes around; and (4) began to unzip his coat, an action Wasson recognized as an indicator of flight.

As stated above, defendant did not enter the porch area without permission, and his actions of walking into an enclosed porch after ringing the doorbell and having an occupant open the door did not indicate familiarity with the residence rising to a suspicion of criminal activity. *Cf. United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000) (finding police had a reasonable suspicion of criminal activity where, *inter alia*, the defendant's rapid approach with his vehicle down the driveway, quick exit from the car, and direct path to the door indicated an apparent familiarity with a residence containing methamphetamines). We find the totality of the remaining circumstances fail to provide a reasonable suspicion defendant was engaged in criminal activity.

Defendant arrived at a residence being searched due to suspected drug activity. Mere presence in a residence being searched for drugs, standing alone, will not support a finding of reasonable suspicion. See *People v. Elliot*, 314 Ill. App. 3d 187, 192, 732 N.E.2d 30, 35 (2000). Under certain circumstances, law-enforcement officers may reasonably infer customers and distributors may arrive at a residence being searched on suspicion of drug activity. See *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008) (totality of the circumstances included the defendant parking his car near an apartment being searched for drugs); *Bohannon*, 225 F.3d at 617 (the defendant's arrival at a methamphetamine lab subject to a search warrant considered as part of the totality of the circumstances). However, here, defendant simply arrived on premises subject to a search warrant. Unlike the defendant in *Jennings*, defendant did not have a plastic bag containing drugs in plain sight. Contrary to the defendant's situation in *Bohannon*, defendant did not approach the residence as if planning to enter without hesitation. Rather, the arresting officers in this case mainly based their suspicion of criminal activity on defendant's presence in a drug house.

While Wasson testified defendant's behavior also indicated possible drug possession, we find defendant did nothing to link himself to criminal activity aside from arriving at a residence being searched for drugs. Upon learning police were conducting a drug investigation, defendant became nervous. Nervousness is not always indicative of criminal conduct. *People v. Davenport*, 392 Ill. App. 3d 19, 27-28, 910 N.E.2d 134, 140 (2009). Here, defendant became "a little nervous" when confronted by two police officers in a small, enclosed space. It is not uncommon for individuals subject to an encounter with police to act slightly nervous. The State argues the timing of defendant's nervousness is suspect. However, police questioned defendant about drug possession immediately after Wasson joined defendant and Thompson on the porch. Wasson did not observe defendant for an extended period of time before asking defendant if he possessed drugs; thus, the evidence does not suggest defendant's nervousness was directly linked to the officers' inquiries of drug possession.

Wasson also testified defendant's furtive behavior of unzipping his coat suggested possible criminal behavior. Based on Wasson's experience, unzipping one's coat during police questioning indicates a desire to flee. Although defendant provided no testimony as to why he unzipped his coat, we note the incident at issue occurred in January. Here, one could infer defendant removed his coat after stepping in from the cold.

Although "reasonable suspicion sufficient to support a *Terry* stop may emerge from seemingly innocent, noncriminal conduct[,]" " '[t]he facts used to support an investigatory detention are insufficient when they describe "a very large category of presumably innocent [individuals] ***." ' [Citations.]" *People v. White*, 221 Ill. 2d 1, 29, 849 N.E.2d 406, 423 (2006) (Fitzgerald, J., dissenting, joined by Kilbride, J.). In this case, defendant arrived at a suspected drug house, rang the doorbell, entered when police opened the door, grew "a little nervous" when informed a search warrant was in progress, and partially unzipped his coat once inside. Under the totality of the circumstances, defendant's conduct does not suggest a reasonable suspicion of criminal activity.

### 2. *Summers*

Next, the State contends defendant's arresting officers acted pursuant to *Summers*, 452 U.S. at 705, 69 L. Ed. 2d at 351, 101 S. Ct. at 2595, in detaining defendant when he entered the security perimeter where police were executing a search warrant. Defendant counters while police had authority to detain him to determine his identity and purpose for being on the premises, they exceeded the scope of such authority when they asked him "questions certainly calculated to elicit an incriminating response."

Pursuant to *Summers*, police have limited authority to detain occupants of a premises while a proper search is being conducted to ensure the occupants are unarmed and uninvolved in criminal activity. *Summers*, 452 U.S. at 705, 69 L. Ed. 2d at 351, 101 S. Ct. at 2595. However, in detaining an occupant, police may not engage in "custodial interrogation" absent " 'an articulable basis for suspecting criminal activity.' " *People v. Conner*, 358 Ill. App. 3d 945, 950, 832 N.E.2d 442, 447 (2005), quoting *Summers*, 452 U.S. at 699, 69 L. Ed. 2d at 348, 101 S. Ct. at 2592-93. Recently, the Seventh Circuit held an "occupant" pursuant to *Summers* included individuals who approach premises during the execution of a search warrant. *United States v. Jennings*, 544 F.3d at 818.

We determined above police had no reasonable suspicion defendant was engaged in criminal conduct. Thus, they could ask defendant his reasons for being on the premises and his identity but could not engage in asking incriminating questions, such as whether defendant possessed illegal substances. However, we disagree with defendant's argument the officers exceeded the scope of *Summers* because they only suspected defendant of drug activity, not possession of a weapon. *Summers* permits detention of occupants of a searched residence when officers have a reasonable suspicion of criminal activity, not only a suspicion of weapon possession. *Summers*, 452 U.S. at 699, 69 L. Ed. 2d at 348, 101 S. Ct. at 2592-93. Wasson and Thompson acted outside the scope of *Summers* in asking incriminating questions without reasonable suspicion; however, we decline to interpret *Summers* as barring investigatory detention of occupants suspected only of criminal activity and not weapons possession.

We further find defendant's interrogation was custodial. Whether an interrogation is custodial requires an examination of the totality of the circumstances, including (1) the time and place of the confrontation; (2) the number of police officers present; (3) the presence or absence of family or friends; (4) any indicia of a formal arrest procedure, such as physical restraint, the show of weapons or force, booking, or fingerprinting; and (5) the manner by which the individual arrived at the place of the interrogation. *People v. Slater*, 228 Ill. 2d 137, 150, 886 N.E.2d 986, 995 (2008). No single factor controls; after considering each one, we must determine whether a reasonable, innocent person would have believed that he was free to leave. *Slater*, 228 Ill. 2d at 150, 886 N.E.2d at 995.

The State concedes defendant was "seized." However, a brief detention for purposes of investigation does not indicate an individual is in custody. See *People v. White*, 331 Ill. App. 3d 22, 27, 770 N.E.2d 261, 265-66 (2002) (noting the defendant was not yet in custody but

was merely detained for investigative questioning during a traffic stop). In this case, the arresting officers exceeded the bounds of an investigatory stop by asking defendant incriminating questions without a logical basis to conclude he was engaged in criminal activity.

Here, the circumstances indicate defendant was in custody, not merely detained. Wasson testified defendant was not free to leave. Though Wasson's subjective opinion is not automatically indicative of custody, the remaining circumstances indicate a reasonable, innocent person in defendant's position would feel he was not free to leave. Defendant entered the porch area of his own accord, but was prevented from leaving by Thompson, who stood in front of defendant, and Wasson, who positioned himself behind defendant and in front of the door. While no formal arrest procedures occurred, defendant's freedom of movement was restricted due to the close confines of the porch area. This indicates defendant's detention was investigatory rather than custodial. Thus, the officers' questioning constituted a custodial interrogation and fell outside the scope of *Summers*.

### 3. *Defendant's Consent To Search*

Because we find defendant's detention was invalid pursuant to *Terry* and *Summers*, defendant's consent to search was tainted by illegality and is also invalid. See *People v. Gherna*, 203 Ill. 2d 165, 187, 784 N.E.2d 799, 812 (2003) (stating "where an illegal detention occurs, 'a subsequent consent to search may be found to have been tainted by the illegality' [citation]"). Therefore, the trial court properly suppressed evidence against defendant on the basis his detention was illegal.

### C. *Miranda*

Finally, the State argues the trial court erred by finding police violated defendant's *Miranda* rights. We disagree.

To protect a citizen's fifth-amendment right against self-incrimination, *Miranda* warnings are required prior to custodial interrogation. *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. An individual is in custody for *Miranda* purposes when the individual is either (1) formally arrested or (2) has suffered a restraint of freedom of movement to the degree associated with formal arrest. *United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994).

Because we determined police did exceed the scope of *Terry* and *Summers* in asking defendant if he possessed drugs, we also find *Miranda* warnings were necessary prior to Wasson and Thompson's questioning of defendant.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

JUSTICE POPE, dissenting:

The trial judge ruled the detention of defendant was unlawful and, without a lawful detention, the consent to search was invalid, and the majority affirms that finding. Because in my opinion the detention was lawful and defendant was not subjected to custodial interrogation in violation of *Miranda*, I dissent.

The trial judge and the majority make much of defendant being "invited" into the porch by Officer Wasson. While the factual determinations of the trial judge are owed great deference, the legal conclusions are reviewed *de novo*. Further, the trial judge stated he was not questioning Officer Wasson's veracity. At the suppression hearing, Officer Wasson testified as follows:

> "[STATE:] And so when you walked out, did you do anything to indicate that he should go in, motion him in, anything at all?
>
> [OFFICER WASSON:] No.
>
> [STATE:] And when he walked in then, was the door open, or shut, or do you know?
>
> [OFFICER WASSON:] I don't know.
>
> [STATE:] So, when he walks in at that point, then you turn around?
>
> [OFFICER WASSON:] Yes."

Contrary to the majority's finding, neither Wasson nor defendant testified that "while the door was open," defendant stepped past Wasson and entered the enclosed porch. Here, Wasson and Thompson were working perimeter security while police officers were inside the residence conducting a search for drugs or awaiting the delivery of a search warrant. Under *Summers*, they were authorized to detain anyone who entered or attempted to enter the secure perimeter. See *Jennings*, 544 F.3d at 818. It is undisputed when defendant rang the doorbell, Wasson exited the porch, walked past defendant, and did not speak to him to invite him into the residence. Wasson was a stranger to defendant and unconnected to the occupants of the household. A stranger departing from a residence following the ringing of a doorbell, in my opinion, does not amount to an invitation to enter.

Defense counsel at oral argument conceded the officers had the right to detain defendant because of the police activity in the house.

In fact, defense counsel stated the officers could have lawfully detained defendant for the duration of the search occurring in the residence. Defendant contended at oral argument that the *questioning* of defendant exceeded the permitted scope of the detention and was therefore unlawful.

Wasson testified: "[w]e were conducting a drug investigation, and [defendant] show[ed] up and walked right into the residence, as if to know the resident, or maybe the activity that was going on. So, there was some suspicion, yes."

In addition, Wasson testified defendant acted nervous once he realized the situation he was in and began to unzip his jacket, which suggested to Wasson defendant might be preparing to flee.

As the majority correctly points out, the trial court erroneously found the officer never asked permitted questions of defendant, like "Why are you here?" Wasson testified defendant was asked that question. Moreover, the trial judge found defendant was asked several times for consent to search. The testimony was, however, that Officer Thompson asked on only one occasion for consent to search and defendant agreed thereto.

Officer Wasson testified, in response to the question of whether there had been complaints about drug activity in this house, that, in addition to the person wanted on the arrest warrant, there was some indication of drug activity there.

Here, police were in the process of securing or executing a search warrant when defendant entered the secured perimeter. This was a place where complaints of drug activity had been received, defendant entered as if already familiar with his surroundings, began to act nervous when he realized the police were on the porch and in the house, and started to unzip his jacket, indicating potential flight to Wasson. These facts are similar to those in *Bohannan*, 225 F.3d at 617, and *Jennings*, 544 F.3d at 818, cited by the majority, and *Baker v. Monroe Township*, 50 F.3d 1186, 1188-89 (3d Cir. 1995), where the recovery of evidence by police was upheld. In particular, in *Bohannan*, the defendant merely approached the residence as if he was familiar with it—he did not even make it onto the porch or into the house.

Looking at the totality of the circumstances as outlined above, *i.e.*, defendant arrives at a house where drug activity was suspected, defendant entered the security perimeter while a search was being or about to be conducted, and upon learning of the drug investigation, acted nervously, I conclude the officers were justified in determining a reasonable suspicion of criminal activity arose.

As the majority notes, under *Summers*, the police have the authority to detain occupants during the execution of a search warrant to

ensure the occupants are unarmed and uninvolved in criminal activity. In *Jennings*, the Seventh Circuit held an "occupant" includes individuals who approach the premises during the execution of a search warrant. *Jennings*, 544 F.3d at 818. I would find the officers acted within the scope of *Summers* in asking defendant if he possessed illegal drugs after he (1) rang the doorbell and entered uninvited into a suspected drug house subject to a search warrant and (2) behaved suspiciously after learning a drug investigation was under way.

Because defendant was lawfully detained, but not in custody, I would further find no custodial interrogation occurred in violation of *Miranda*. Defendant entered the porch area of his own accord, where he met Thompson and shook his hand. Defendant was not physically restrained or handcuffed nor did the officers display their weapons. Defendant's detention was investigatory, not custodial.

Since defendant's detention was lawful pursuant to *Summers*, his consent to search was not tainted by any illegality and was thus valid. Consequently, I would reverse the court's suppression of the evidence.