# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Leach*, 2011 IL App (4th) 100542

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DANIEL L. LEACH, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-10-0542 |
| Filed | June 30, 2011 |
| Rehearing denied | July 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was validly stopped for a suspected curfew violation and the officers asked for consent to search after the stop had concluded without the issuance of any curfew violation, defendant's consent to the search of his person was voluntary and the trial court erred in granting his motion to suppress the cannabis found in his possession, since the absence of any *Mendenhall* factors, that is, a threatening presence of several officers, the display of a weapon, physical touching, or the use of language or tone of voice indicating that compliance with an officer's request might be compelled, supported the conclusion that defendant consented voluntarily. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 10-CF-18; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
|---|---|
|  | Michael J. Pelletier, Karen Munoz, and John M. McCarthy, all of State Appellate Defender's Office, of Springfield, for appellee. |

| Panel | JUSTICE McCULLOUGH delivered the judgment of the court, with opinion. |
|---|---|
|  | Presiding Justice Knecht concurred in the judgment and opinion. |
|  | Justice Pope dissented, with opinion. |

**OPINION**

¶ 1    In April 2010, following a hearing, the trial court granted defendant Daniel L. Leach's motion to suppress evidence in his prosecution for possession of cannabis. The State brings this interlocutory appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006), arguing the court erred in granting defendant's motion to suppress as defendant validly consented to the search resulting in the seizure of the evidence. We agree with the State and reverse.

¶ 2    The evidence at defendant's suppression hearing consisted of testimony by Livingston County sheriff's police officer Brad DeMoss. DeMoss testified he and another officer, named Fitzpatrick, conducted an investigatory stop of defendant on January 14, 2010. On that date, late at night, the officers were patrolling a residential area in an unmarked squad car when they saw defendant walking. The officers stopped defendant, suspecting he was violating curfew by being out after 11 p.m. and under age 17.

¶ 3    Defendant was initially approached by DeMoss alone. DeMoss asked defendant for his name and identification, which showed defendant was 19 years old. Fitzpatrick ran defendant's identification card for outstanding warrants and found none. When asked at the suppression hearing whether defendant's identification card was returned to him following this warrant check, DeMoss testified, "I believe so." Fitzpatrick then asked defendant whether he had ever been arrested. Defendant explained he had been arrested once in connection with a drug raid that occurred at his mother's house. At that point, DeMoss asked defendant "if he would mind if" DeMoss searched him. According to DeMoss, defendant responded, "[N]o, go ahead." The ensuing search resulted in DeMoss's discovery of cannabis in defendant's possession.

¶ 4    On appeal, the State challenges the trial court's judgment granting defendant's motion

to suppress. In general, in an appeal from a trial court's suppression ruling, we employ a two-part standard of review. *People v. Oliver*, 236 Ill. 2d 448, 454, 925 N.E.2d 1107, 1110 (2010). "The trial court's factual findings are entitled to great deference, and we will reverse them only if they are against the manifest weight of the evidence." *Id*. "The trial court's ultimate legal ruling on whether suppression is warranted, however, is reviewed *de novo*." *Id*. *De novo* review is also appropriate "where the facts and witness credibility are not in dispute." *People v. Roberts*, 374 Ill. App. 3d 490, 495, 872 N.E.2d 382, 387 (2007).

¶ 5        The State claims the search leading to defendant's arrest was conducted pursuant to his consent. A defendant's voluntary consent to be searched is a recognized substitute for a warrant issued upon probable cause, which is ordinarily required of a valid search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Where the State claims a search is supported by a defendant's consent, the State has the burden of showing the consent was voluntarily given. *Id*. at 222.

¶ 6        "[A]n officer is always free to request permission to search." *People v. Brownlee*, 186 Ill. 2d 501, 515, 713 N.E.2d 556, 563 (1999). A defendant's consent given while or after he is unlawfully seized, however, may be found to be tainted by the seizure's illegality. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality op.). Once a seizure is concluded and the defendant is free to discontinue his encounter with the police, a defendant's voluntary consent to be searched may be obtained unless he is unlawfully seized anew. *People v. Cosby*, 231 Ill. 2d 262, 276, 898 N.E.2d 603, 612 (2008) ("The relevant question [in these consolidated cases] is whether the officers' actions after the initial traffic stops had concluded constituted a second seizure of either defendant."). This is true because, absent an unlawful seizure, officers may generally request an individual's consent to a search even without a basis for individualized suspicion. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991); see also *People v. Ramsey*, 362 Ill. App. 3d 610, 621, 839 N.E.2d 1093, 1103 (2005) ("[A]n officer is free to request permission to search the car after the conclusion of [a] traffic stop so long as the officer does not unlawfully detain the car or its occupants prior to requesting permission.").

¶ 7        A person is seized when, by means of physical force or a show of authority, the person's freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) (opinion of Stewart, J., joined by Rehnquist, J.). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id*. at 554 (opinion of Stewart, J., joined by Rehnquist, J.); see also *People v. Gherna*, 203 Ill. 2d 165, 178, 784 N.E.2d 799, 807 (2003) (clarifying this analysis presumes "a reasonable innocent person under identical circumstances").

¶ 8        Courts considering whether a seizure has occurred test for the presence of the "*Mendenhall* factors." See *People v. Murray*, 137 Ill. 2d 382, 390, 560 N.E.2d 309, 313 (1990) (adopting the *Mendenhall* factors), *overruled in part on other grounds by People v. Luedemann*, 222 Ill. 2d 530, 548, 857 N.E.2d 187, 199 (2006). The *Mendenall* factors are "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Luedemann*, 222 Ill. 2d at 553, 857 N.E.2d at 201.

¶ 9       While the *Mendenhall* factors are not exhaustive and "a seizure can be found on the basis of other coercive police behavior that is similar to the *Mendenhall* factors" (*id*. at 557, 857 N.E.2d at 203), "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person" (emphasis and internal quotation marks omitted) (*id*. at 553, 857 N.E.2d at 201). "From the very minute the *Mendenhall* factors were created, courts have used their absence to determine that seizures had not occurred." *Id*. at 554, 857 N.E.2d at 202; see also *id*. at 553-54, 857 N.E.2d at 201-02 (collecting cases that found no seizure had occurred in the absence of the *Mendenhall* factors).

¶ 10      In this case, the parties initially disagree whether the investigatory stop of defendant for a possible curfew violation had ended or been unlawfully prolonged when DeMoss requested defendant's consent to be searched. We note the parties agree the stop was valid and the officers were authorized to request defendant's identification and run a warrant check.

¶ 11      The State argues the stop of defendant concluded when his identification card was returned to him after the warrant check was performed. We agree. Initially, the parties contest whether the evidence supports a conclusion that defendant's identification card was returned to him. We agree with the State that the card was returned. When asked about the card, DeMoss testified he believed it was returned when the warrant check was completed. Defendant did not contradict this testimony. Absent a specific finding by the trial court to the contrary, or a finding that DeMoss lacked credibility, this response was sufficient to establish that the officers handed defendant his identification card following the warrant check.

¶ 12      The issue of when an investigatory stop ends arises most frequently in the context of traffic stops. Generally, a traffic stop ends when the paperwork of the driver and any passengers has been returned to them and the purpose of the stop has been resolved. See *Cosby*, 231 Ill. 2d at 276, 898 N.E.2d at 612 ("The requests for consent to search in both of the instant cases followed the officers' returning of the defendants' paperwork. At that point, the traffic stops came to an end."); see also *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565 ("This traffic stop concluded when *** [the officer] returned to the driver his license and insurance card, and explained that no citations would be issued."). Applying this rule to the instant case, the investigatory stop ended when defendant's identification card was returned to him and the officers concluded he would not be cited for a curfew violation. At that point, a reasonable person in defendant's circumstances would have believed he was free to go. See *Ramsey*, 362 Ill. App. 3d at 617, 839 N.E.2d at 1100 (finding no evidence suggested defendant should not have felt he was free to leave when the traffic stop concluded); see also *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) (holding the fourth amendment does not require an officer to advise a lawfully seized defendant he is free to go before a subsequent search will be deemed voluntary).

¶ 13      Thus, the relevant question is whether the officers' actions after the stop had ended constituted a subsequent seizure of defendant. Here, three of the four *Mendenhall* factors were clearly absent. While two officers were involved in the stop, "the presence of only two officers, without more, is not a factor that would indicate a seizure occurred." *Cosby*, 231 Ill. 2d at 278, 898 N.E.2d at 613. Further, nothing in the record indicates that either officer touched defendant or displayed a weapon.

¶ 14    With respect to the fourth factor, the trial court found DeMoss used a coercive tone or body language to convey to defendant that he was not free to leave. However, this finding is against the manifest weight of the evidence. The court based its finding on DeMoss's testimony that, while Fitzpatrick was checking defendant's identification for outstanding warrants, defendant was not free to leave. This testimony is consistent with the parties' agreement that defendant remained validly seized during the warrant check. DeMoss was never asked explicitly whether he believed defendant was not free to leave after his identification was returned to him or when he was asked to consent to the search. DeMoss testified he never told defendant he was not free to leave. The evidence does not support an inference that DeMoss continued to believe defendant was not free to go after defendant's identification was returned to him.

¶ 15    Further, no evidence supported the trial court's factual finding that DeMoss's actions or tone conveyed to defendant that his compliance with the request for consent could have been coerced. DeMoss testified he asked defendant "if he would mind if" DeMoss searched him. The court made no finding that DeMoss was an incredible witness or that his characterization of the request was unbelievable or inaccurate. Absent actual evidence that DeMoss used coercive language or a compelling tone, the court was not permitted to infer the presence of this factor. See *Oliver*, 236 Ill. 2d at 457, 925 N.E.2d at 1112 (rejecting the defendant's contention that the court should infer the officer's use of compelling language absent any evidence of such use). Accordingly, we conclude the fourth *Mendenhall* factor was absent from this case.

¶ 16    The absence of the *Mendenhall* factors indicates a likelihood that defendant's consent to be searched was voluntary. See *Luedemann*, 222 Ill. 2d at 554, 857 N.E.2d at 202 ("Obviously, a seizure is much less likely to be found when officers approach a person in such an inoffensive manner" as when none of the *Mendenhall* factors are present.). Nevertheless, defendant notes other circumstances on which the trial court relied in finding defendant involuntarily consented to the search. Specifically, defendant emphasizes he "was a young man; he was walking down the street late at night; he was approached by a police officer who was investigating a potential curfew violation which made the initial detention valid; the officers took his identification and ran a warrant check; and he was being questioned while standing next to a police car 'with two officers by him.' " While these circumstances are not irrelevant to the question of the voluntariness of defendant's consent (*Mendenhall*, 446 U.S. at 558 (opinion of Stewart, J., joined by Rehnquist, J.)), courts have found the presence of similar circumstances does not outweigh the absence of the *Mendenhall* factors. For example, in *Cosby*, 231 Ill. 2d at 279, 898 N.E.2d at 614, the supreme court found a defendant's consent was voluntarily given as none of the *Mendenhall* factors was present, despite the following circumstances relied upon by that defendant: "(1) the presence of two officers; (2) the stop took place in the early morning hours in a deserted and poorly lit locale; and (3) the officers' 'double teaming' of Cosby at his car at the time of the request." Similarly, in *Mendenhall*, 446 U.S. at 558 (opinion of Stewart, J., joined by Rehnquist, J.), a majority of the Supreme Court found, in light of the absence of the factors, the defendant was not seized even though she was 22 years old, had not been graduated from high school, and was a black woman and, it was argued, "may have felt unusually threatened

-5-

by the officers, who were white males." See also *id*. at 560 (Powell, J., concurring in part and concurring in the judgment, joined by Burger, C.J., and Blackmun, J.) (concurring with this part of the lead opinion). Accordingly, we conclude the circumstances cited by defendant in this case are insufficient to find a seizure occurred in the absence of the *Mendenhall* factors.

¶ 17   Finally, we conclude this court's decision in *People v. Chestnut*, 398 Ill. App. 3d 1043, 921 N.E.2d 811 (2010), which the trial court found controlling and on which defendant relies in this appeal, is inapposite. In that case, the defendant approached a house while it was being searched pursuant to a warrant based on reports of drug activity there. *Id*. at 1044-45, 921 N.E.2d at 814. The defendant entered an enclosed porch where two officers were stationed to provide security during the search. *Id*. at 1045, 921 N.E.2d at 814-15. After some conversation and questioning between the defendant and the officers, one officer asked for and received the defendant's consent to be searched. *Id*., 921 N.E.2d at 815. The officers found crack cocaine in the defendant's possession. *Id*. at 1046, 921 N.E.2d at 816. On appeal, this court held the defendant's consent was tainted by the initial illegality of the officers' seizure. *Id*. at 1054, 921 N.E.2d at 822.

¶ 18   Here, the parties agree the initial stop of defendant was valid. *Chestnut* is, thus, irrelevant to our analysis. As stated, the valid investigatory stop in this case concluded when the officers returned defendant's identification card to him. The officers' actions following the conclusion of the stop did not constitute a seizure. Defendant's consent to the search was, therefore, voluntarily given. Accordingly, the trial court erred by granting defendant's motion to suppress.

¶ 19   For the reasons stated, we reverse the judgment of the trial court granting defendant's motion to suppress and remand for further proceedings not inconsistent with this opinion.

¶ 20   Reversed and remanded.

¶ 21   JUSTICE POPE, dissenting:

¶ 22   I respectfully dissent. Here a young person, not violating any law, was stopped by the police while walking down the street of his own town. I agree with the majority the original stop was a lawful *Terry* stop (see *Terry v. Ohio*, 392 U.S. 1 (1968)), because defendant appeared youthful and the police suspected a curfew violation. However, defendant produced identification showing he was nearly 20 years old and lived in Streator, the town where he was detained. Two officers were at the scene and while defendant was detained by one of the officers, the other officer checked for outstanding warrants. Finding none, the officer was asked by defense counsel "at that point in time, was he allowed to proceed on his way." The officer answered "no."

¶ 23   In other words, the officers determined defendant's identity, determined he was not subject to the curfew laws, and determined there were no outstanding arrest warrants for the defendant. At this point, the detention should have ceased. Rather than telling defendant he was free to go, rather than getting into the squad car and driving away, the officer testified defendant was not allowed to proceed on his way. Instead, the officers questioned defendant about whether he had ever been arrested. Apparently, during the check of defendant's

identification, officer Fitzpatrick determined defendant had a prior arrest, the date of which is not in the record. To his credit, when asked about any prior arrest, the defendant answered the question truthfully. With two police officers standing with defendant outside the squad car, at a time when the officer admitted defendant would not have been allowed to proceed away, and at a time when the reasonable suspicion for the curfew stop had dissolved, the police continued to interrogate defendant about prior criminal activity and sought consent to search defendant. In my opinion, defendant was unlawfully detained at that point, and the consent to search was tainted. I would therefore affirm the trial court's order suppressing the results of the search.