2021 IL App (1st) 182048-U

THIRD DIVISION
February 24, 2021

No. 1-18-2048

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CR 17762 |
| GERALD RUFUS, | ) ) | |
| | ) | Honorable William H. Hooks, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: The trial court did not err when it dismissed defendant's postconviction petition alleging ineffective assistance of trial and appellate counsel because defendant was not prejudiced by his counsel's representation.

¶ 2    Defendant Gerald Rufus was charged with and convicted of first-degree murder for killing his girlfriend Theresa Russell. Defendant filed a postconviction petition alleging, among other things, that his attorneys were constitutionally ineffective. On appeal, defendant argues that

both his trial counsel and his appellate counsel were ineffective for failing to seek the suppression of statements he made to police on the basis that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant's claim fails because he was not subject to custodial interrogation when he made the statements to police and because he cannot show prejudice. Finding no reversible error in the dismissal of defendant's postconviction petition, we affirm.

¶ 3                                        BACKGROUND

¶ 4     Theresa Russell was shot and killed on February 25, 2005. Chicago Police were called to the scene. Officer Robert Shoup was one of the responding officers. When police arrived, they saw Russell's body on the floor of the apartment and defendant was straddling her, crying, while he was calling for an ambulance. The officers observed that defendant had blood on his clothes and was distressed. When Officer Shoup asked defendant what happened, defendant replied that there was a drive-by shooting in front of the apartment, that Russell was shot, and that defendant had to carry Russell from outside, up the stairs, and into the apartment. The officers attempted to move defendant from his position on top of Russell's body to preserve the crime scene, but defendant did not want to move from atop Russell. Officer Shoup had to grab defendant and convince him to move away from Russell's body.

¶ 5     Officer Shoup led defendant away from the area where Russell's body was located to the back porch and asked defendant again what happened. This time, defendant stated that he and Russell were outside on the back porch when a van drove through the alley. Defendant claimed that Russell was struck by a gunshot fired from the van and defendant carried her inside from the back porch.

¶ 6      Officer Shoup sought clarification from defendant's conflicting accounts and asked defendant a third time what happened. This time, defendant stated that the shooters came up the back porch stairs and fired into the apartment, striking Russell. The three questions Officer Shoup asked defendant occurred within the first 15 minutes the police arrived at the scene. The officers spoke with the other people present at the scene, which were defendant's aunt and uncle and two of his cousins. The officers did not recover a weapon or any shell casings. The officers asked defendant to submit to a gunshot residue test, but defendant refused. The officers only observed blood near Russell's body, they did not locate any blood in the front or the back of the apartment or on the stairs leading into the apartment. The officers searched the area around the building and could not find any evidence that would have supported any of the accounts that defendant had given. The officers arrested defendant and he was later charged with Russell's murder.

¶ 7      After defendant was arrested and taken to the station, a gunshot residue test was administered. The test revealed no gunshot residue on defendant's hands or his clothes. The medical examiner that performed Russell's autopsy determined that Russell had been shot from a distance of less than six inches away. The bullet went through her left arm and into her chest causing her death.

¶ 8      Before trial, defense counsel filed a motion to suppress the statements defendant made to the officers. The original written motion focused primarily on an alleged violation of defendant's Fourth Amendment rights. Defendant argued that the officers did not have probable cause to arrest defendant based upon their observations at the scene and, thus, the statements that defendant made after an illegal seizure should be suppressed.

¶ 9      At the hearing on the motion to suppress, principally in response to questions posed by the trial judge, counsel argued that defendant's statements should be suppressed because of an alleged violation of defendant's Fifth Amendment rights. Counsel argued that defendant should have been read his *Miranda* rights when he was taken to the back porch and questioned by Officer Shoup. Counsel argued that when police made a determination that defendant was a suspect and began asking him questions about what happened, "at that point they should have advised him of his rights and they did not." Defense counsel further filed a post-hearing brief in support of defendant's motion to suppress the statements in which defendant argued that his statements should be suppressed because defendant was under arrest once Officer Shoup grabbed him to move him away from Russell's body. Defendant argued that when Officer Shoup placed his hands on defendant and moved him to another area of the house, defendant was seized and his subsequent statements should be suppressed. The trial court denied the motion to suppress.

¶ 10      Defendant was tried by a jury. The jury found defendant guilty of first-degree murder. The trial court sentenced defendant to 60 years in prison. Defendant appealed his conviction to this court. On appeal, defendant argued that the trial court committed errors when conducting *voir dire*. We affirmed defendant's conviction and, in doing so, we noted that the evidence at trial was not closely balanced. *People v. Rufus*, 2016 IL App (1st) 134008-U.

¶ 11      A year after we affirmed defendant's conviction on appeal, defendant filed a postconviction petition in the trial court. In his postconviction petition, which defendant filed *pro se*, defendant argued, among other things, that his attorneys were constitutionally ineffective. In support of his claim that he did not receive effective assistance of counsel, defendant alleged that he made statements to Officer Shoup without being read his *Miranda* rights and, thus, his

statements should have been suppressed. The trial court summarily dismissed defendant's postconviction petition. Defendant now appeals the dismissal of his postconviction petition.

¶ 12                                    ANALYSIS

¶ 13    The issue on appeal in this case is whether defendant raised an arguably meritorious constitutional claim for ineffective assistance of counsel, such that he is entitled to proceed to the second stage of postconviction review. The Postconviction Hearing Act (725 ILCS 5/122–1 *et seq*.) provides a process by which a criminal defendant may challenge his or her conviction by filing a petition for relief in the circuit court. 725 ILCS 5/122–1 (West 2012). The Act provides for a three-stage process for adjudicating postconviction petitions. *People v. Harris,* 224 Ill. 2d 115, 125 (2007). At the first stage, the court independently assesses the merits of the petition. 725 ILCS 5/122–2.1 (West 2012). If the court finds the petition to be "frivolous" or "patently without merit," the court shall dismiss the petition. 725 ILCS 5/122.1(a)(2) (West 2012). If the circuit court dismisses a postconviction petition at the first stage, we review the propriety of that dismissal *de novo*. *People v. Boyd*, 347 Ill. App. 3d 321, 327 (2004).

¶ 14    The Constitution of the United States guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. Amend. VI (West 2018). Thus, where a criminal defendant is convicted of an offense but did not receive constitutionally adequate representation, he can seek relief to vindicate his constitutional right to counsel. *People v. Burnett*, 385 Ill. App. 3d 610, 614 (2008). To be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *People v. Scott*, 2015 IL App (1st) 131503, ¶ 27. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364–365 (1981)). "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. We analyze claims of ineffective assistance of counsel by considering the entire record. *People v. Hommerson*, 399 Ill. App. 3d 405, 415 (2010).

¶ 15    On appeal, defendant argues that he stated an arguably meritorious claim for ineffective assistance of counsel in his postconviction petition. He contends that his trial counsel and his counsel on direct appeal were ineffective. Defendant maintains that his trial counsel was ineffective for failing to try to suppress his inconsistent statements on the basis that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective and for failing to raise the *Miranda* issue on direct appeal.

¶ 16    The Fifth Amendment of the Constitution of the United States provides that a defendant in a criminal case cannot be compelled to be a witness against himself. U.S. Const. Amend V (West 2018). In order to protect that right, if the State wishes to later introduce a suspect's statement at trial, investigators must inform the suspect about certain procedural safeguards before the investigators conduct a custodial interrogation. *People v. Patel*, 313 Ill. App. 3d 601, 604 (2000) (citing *Miranda*, 384 U.S. at 444). The Illinois Supreme Court has explained that "the purpose of the [*Miranda*] warnings is to ensure that the accused is aware of his substantive constitutional right not to incriminate himself and to provide him with the opportunity to exercise that right." *People v. Winsett*, 153 Ill. 2d 335, 348 (1992).

¶ 17    For the prosecution to later be able to introduce a suspect's statements at trial, investigators must have given the suspect *Miranda* warnings before the suspect was subject to

"custodial interrogation." *Miranda*, 384 U.S. at 444; *People v. Chestnut*, 398 Ill. App. 3d 1043, 1054 (2010). In *Miranda*, the Supreme Court clarified that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* In other words, in order for *Miranda* to apply, the suspect must be both (1) in custody and (2) subject to interrogation by police. *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 39 (quoting *People v. Villalobos*, 193 Ill. 2d 229, 241-42 (2000)).

¶ 18    In support of his claim that he was "in custody" when he made statements to the officers, defendant argues that when Officer Shoup grabbed his shoulder and led him to the back porch, the officer's actions "constituted indicia of formal arrest." Defendant contends that Officer Shoup had a weapon, that the officers on scene outnumbered defendant, and that Officer Shoup isolated defendant from his family and moved him to the back porch when defendant did not want to move. Defendant posits that the above circumstances suggest that he was "in custody" for purposes of *Miranda*. Officer Shoup testified that there was an alternative explanation for moving defendant: to preserve the crime scene and to provide access to it for emergency personnel, not to exercise any coercive control over defendant.

¶ 19    Defendant did not want to move from atop Russell. It was necessary for the officers to move defendant from his position on top of Russell to preserve possible evidence and to allow the paramedics, and eventually the crime scene investigators, access to Russell's body. Officer Shoup moved defendant not to restrain him and not as a show of official force, but as an essential step in preliminarily assessing the scene. Officer Shoup's physical contact with defendant was not coercive, it was incidental. The record evidence shows that Officer Shoup was attempting to physically guide defendant away from the deceased Russell rather than physically restrain him in

any way. Officer Shoup testified that it took 10-15 minutes to move defendant away from Russell's body because defendant was so reluctant to leave the immediate crime scene. Officer Shoup was trying to convince defendant to move, he did not forcibly pull defendant into another room. After all, defendant was not even a potential suspect at that point, he was only a potential eyewitness and grieving boyfriend. There is no indication that the officers were trying to restrain defendant's freedom of movement in any way or exercise control over his movements, other than to move him from on top of the immediate crime scene.

¶ 20    Officer Shoup testified that when he was speaking to defendant, he merely considered defendant to be an eyewitness, not a suspect. Defendant was not handcuffed, the officers did not draw their weapons, and the officers had no designs on arresting defendant at the time Officer Shoup touched him. Defendant was at his own home and had several family members nearby, and there is no indication that defendant was ever prevented from moving about as he pleased. Defendant was never in any way restrained until several hours after he had made all the subject statements when he was eventually placed under arrest. The record does not support defendant's contention that he was in custody at the time he made his statements.

¶ 21    As to the issue of whether there was "interrogation," defendant argues that when Officer Shoup asked three separate times what happened, the questioning amounted to an interrogation. Defendant further argues that after he made the first two conflicting statements, Officer Shoup must have considered him to be the prime suspect, yet Officer Shoup asked defendant what happened a third time, allegedly seeking an incriminating response.

¶ 22    "Although *Miranda* warnings are required for custodial interrogation, police need not give the warnings before asking questions in the course of general, on-the-scene investigation of a possible crime." *People v. Laspisa*, 243 Ill. App. 3d 777, 783 (1993). The evidence in this case

shows that when Officer Shoup arrived on the scene, he simply was gathering general information about what led to Russell being shot and killed. Officer Shoup asked defendant what happened, a clear general, on-the-scene investigative question. The officers had just arrived at the apartment and were gathering preliminary information. Defendant was crying, had blood on his clothes, and was straddling the victim when he made the first statement. After defendant was led away from the victim, the officer again asked what happened. Officer Shoup testified that he asked defendant the question a second time to make sure he could accurately relay the statement to the officer writing the report. Officer Shoup subsequently asked the question a third time to try to clarify defendant's original conflicting accounts. All three times Officer Shoup asked defendant what happened were within the first 15 minutes of the officers being on the scene.

¶ 23    When Officer Shoup was asking defendant what happened, he was not seeking to elicit an incriminating response. The officers had just arrived on the scene in response to a call of a person shot and they were trying to assess the scene. The simple question of "what happened?" is not the type of probing question generally associated with an interrogation, but one associated with a general on-the-scene inquiry into the events that led to the officers being called to the premises. Officer Shoup was engaged in general questioning, not interrogation. The officers also asked several of defendant's family members in the residence about what happened, but it could not seriously be argued that they were all subject to custodial interrogation.

¶ 24    As a final point, defendant's counsel in the trial court *did* seek to have the statements suppressed, so it is not as if counsel failed to put the issue of the admissibility of the statements before the court. Counsel filed a written motion seeking to have the statements suppressed on Fourth Amendment grounds. However, at the hearing on the motion to suppress, counsel also argued that the officers violated defendant's Fifth Amendment rights and the dictates of

*Miranda*. Counsel argued that defendant should have been read his *Miranda* rights when he was taken to the back porch and questioned. Counsel further argued that when police had reached a conclusion that defendant was a suspect and still asked him questions about what happened, "at that point they should have advised him of his rights and they did not." In addition, defense counsel filed a post-hearing brief in support of his motion to suppress in which defendant argued that his statements should be suppressed because defendant was under arrest once Officer Shoup grabbed defendant to move him away from Russell's body. Defendant argued that when Officer Shoup placed his hands on defendant and physically removed him to another area of the apartment, defendant was seized and his statements should be suppressed. Trial counsel raised both the issue of whether defendant was in custody and the issue of whether there was interrogation. Trial counsel even specifically raised the now-alleged *Miranda* issue. The trial court rejected it.

¶ 25     Even if appellate counsel had raised the *Miranda* issue on defendant's behalf on direct appeal, it would not have been successful because defendant was not subject to custodial interrogation when he made the statements. When we view the allegations in a light most favorable to defendant, he fails to raise an arguably meritorious constitutional claim. Moreover, on direct appeal, we explained that the evidence in this case was not closely balanced. *People v. Rufus*, 2016 IL App (1st) 134008-U, ¶ 29. Defendant cannot show prejudice from counsel's alleged error and, without prejudice, there is no relief for ineffective assistance of counsel. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 19.

¶ 26                         CONCLUSION

¶ 27     Accordingly, we affirm.

¶ 28     Affirmed.